Argued and submitted May 6, affirmed September 11, 1996, petition for allowed March 4, 1997 (325 Or 45)
See later issue Oregon Reports

Joel C. GROSHONG,
Joann Huth and Gary Huth,
*Appellants,*

*v.*

MUTUAL OF ENUMCLAW INSURANCE COMPANY,
a Washington corporation,
*Respondent.*

(9407-04901; CA A89325)

923 P2d 1280

Edward L. Sears argued the cause for appellants. With him on the briefs was Lehner, Mitchell, Rodrigues & Sears.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

### HASELTON, J.

Plaintiffs appeal from the trial court's judgment, following a stipulated facts trial, that the defendant insurance company was not obligated to defend and indemnify plaintiffs against a claim of intentional housing discrimination. We affirm.

The parties stipulated to the following facts: Plaintiff Joel Groshong owned the Cabana Apartments in Portland and employed plaintiffs JoAnn and Gary Huth to manage them. In November 1992, a prospective tenant, Ms. Sifuentes, who had a seven-week-old son, inquired about renting a vacant second-floor apartment. Ms. Huth informed Sifuentes that the Cabana Apartments did not allow small children on the second floor because of safety concerns—*e.g.*, small children might fall off the balcony or injure themselves on stairs leading up to the second-floor apartments. Because no first-floor apartments were available, Sifuentes was unable to obtain housing at the Cabana Apartments.[1]

Shortly thereafter, Sifuentes retained legal counsel who sent plaintiffs a demand letter, enclosing a draft federal court complaint alleging intentional housing discrimination, and demanding a settlement of $15,000. Plaintiffs tendered the demand letter and draft complaint to their insurer, defendant Mutual of Enumclaw, requesting coverage under plaintiffs' "Special Businessowners" insurance policy. Defendant refused to defend or indemnify plaintiffs against Sifuentes' claims.

Sifuentes next filed an administrative complaint with the United States Department of Housing and Urban Development (HUD). Plaintiffs tendered that complaint to defendant, who, once again, declined the tender. HUD ultimately issued a written "determination of reasonable cause" that plaintiffs, in excluding Sifuentes and her son from the second-floor apartment, had violated the federal Fair Housing Act, 42 USC § 3601 *et seq*,[2] and initiated a charge of discrimination based on that determination.

---

[1] The Cabana Apartments did rent first-floor apartments to families with small children.

[2] Under the Fair Housing Act, landlords may not discriminate against potential tenants based on race, color, religion, sex, national origin, or "familial" status.

In November 1993, the United States Department of Justice filed a complaint on Sifuentes' behalf against plaintiffs in federal court. Defendant declined plaintiffs' tender of that complaint. In April 1994, plaintiffs, who had retained their own legal counsel, entered into a settlement and consent order with the United States and Sifuentes. That settlement and consent order required plaintiffs to, *inter alia*, (1) pay Sifuentes $10,000 for "compensatory damages and counsel fees" and (2) discontinue their policy of refusing to rent to families with small children.

In July 1994, plaintiffs filed this action, asserting that defendant had breached its contract of insurance by denying coverage and, particularly, by failing to defend and indemnify plaintiffs against Sifuentes' administrative and civil claims. The pertinent portions of plaintiffs' policy provided:

> "The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of * * * **personal injury** caused by an **occurrence** to which this insurance applies.
>
> "* * * * *
>
> "**occurrence** means * * * with respect to **personal injury**, the commission of an offense, or series of similar or related offenses;
>
> "**personal injury** means injury which arises out of one or more of the following offenses committed in the conduct of the **named insured's** business:
>
> "* * * * *
>
> "(c)  wrongful entry or eviction, or other invasion of the right of private occupancy[.]" (Boldface in original.)

The policy further provides that,

> "The Company shall have the right and duty to defend any claim or suit against the **insured** seeking damages payable under this policy, even though the allegations of the suit

---

42 USC § 3604. "Familial status" includes the circumstance of a person under the age of 18 who is living with a parent or other person having legal custody of the child. 42 USC § 3602(a).

may be groundless, false, or fraudulent." (Boldface in original.)

Plaintiffs sought damages, including their costs incurred in defending the administrative and civil proceedings, the amount of their settlement with Sifuentes, and anticipated costs of future compliance with the federal court consent order.

Defendant answered, asserting that its policy did not cover Sifuentes' claim for four reasons: (1) That claim did not allege "bodily injury," "property damage," or "personal injury" within the meaning of plaintiffs' policy. (2) That claim did not allege an "occurrence" within the policy's coverage. (3) That claim fell within the policy's exclusion for "personal injury arising out of the willful violation of a penal statute[.]" (4) It would be against public policy to provide insurance coverage for a claim of intentional housing discrimination.

The trial court, after implicitly rejecting defendant's public policy argument, held that, as a matter of law, Sifuentes' claim did not pertain to "wrongful entry or eviction, or other invasion of the right of private occupancy" and, thus, did not allege a "personal injury" within the policy's coverage. Accordingly, the court entered judgment for defendant.

On appeal, plaintiffs contend that the trial court erred in its construction and application of the operative "wrongful entry or eviction, or other invasion of the right of private occupancy" policy language. As support for their position, plaintiffs invoke cases from other jurisdictions that have, apparently, construed similar language as covering housing discrimination claims.[3]

Defendant responds that the trial court's construction of the policy language was correct and musters its own supporting authority from other jurisdictions.[4] In all events,

---

[3] *See, e.g., State Farm Fire & Cas. Co. v. Westchester Investment,* 721 F Supp 1165 (CD Cal 1989); *Gardner v. Romano,* 688 F Supp 489 (ED Wis 1988); *Clinton v. Aetna Life & Surety Co.,* 594 A2d 1046 (Conn Super 1991) (all holding that "other invasion of the right of private occupancy" encompasses claim of racial discrimination).

[4] *See, e.g., Bernstein v. North East Ins. Co.,* 19 F3d 1456 (DC Cir 1994); *Boston Housing Auth. v. Atlanta Intern. Ins. Co.,* 781 F Supp 80 (D Mass 1992); *Martin v. Brunzelle,* 699 F Supp 167 (ND Ill 1988); *Larson v. Continental Cas. Co.,* 377 NW2d 148 (SD 1985).

defendant asserts, extending insurance coverage to Sifuentes' claim would be void as against public policy under Oregon law.

As amplified below, we agree with defendant that public policy precludes insurance coverage in the circumstances presented here. Accordingly, we do not address the question of whether, in the absence of public policy constraints, Sifuentes' claim would otherwise implicate "wrongful entry or eviction, or other invasion of the right of private occupancy."

Before reaching the substance of defendant's public policy argument, however, we must resolve a threshold procedural issue pertaining to the presentation of that issue. Plaintiffs argue that we cannot consider the public policy argument because defendant was required, under ORAP 5.57, to cross-assign error to the trial court's rejection of that argument but failed to do so. Defendant responds that a cross-assignment of error is unnecessary—and, indeed, would be inappropriate under ORAP 5.57—and that the public policy argument is properly characterized and reviewed as an alternative basis for affirmance. Defendant is correct.

ORAP 5.57 provides, in part:

"(1)   A respondent must cross-assign as error any trial court ruling described in subsection (2) in order to raise the claim of error in the appeal.

"(2)   A cross-assignment of error is appropriate:

"(a)   If, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal; and

"(b)   If the relief sought by the appellant were to be granted, respondent would desire reversal or modification of an intermediate ruling of the trial court." (Footnote omitted.)

Thus, ORAP 5.57 requires a cross-assignment of error only if a respondent challenges and seeks reversal or modification of a *ruling* of the trial court." (Emphasis supplied.) Here, defendant does not seek reversal or modification of a ruling by the trial court; rather, defendant urges us to affirm the

trial court based on *reasoning* the court rejected. In *Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 137 Or App 475, 905 P2d 848 (1995), which also involved construction and enforcement of an insurance policy, we rejected an argument virtually identical to the one that plaintiffs make here:

> "Plaintiff argues that we may not consider this issue, because
>
> " 'the trial judge specifically found that the facts in this case gave rise to an occurrence. If the Defendant wishes to challenge this portion of the ruling below, it should have designated a cross-assignment of error.'
>
> "We disagree. The trial court's various reasons for its ruling on the motions. for summary judgment are not independently assignable as error. 'Rulings' must be assigned or cross-assigned as error, not the reasons for the rulings. ORAP 5.57. In this case, the only rulings at issue are the trial court's decisions to grant defendant's motion for summary judgment and to deny plaintiff's cross-motion. Defendant's argument that the trial court was correct in both instances, because the property damage was not caused by an 'occurrence,' is merely an argument that the court was correct for the wrong reason." *Id.* at 478 n 2 (citations omitted).

■    We turn, then, to the merits of defendant's argument that, under Oregon law, public policy precludes insurers from defending and indemnifying their insureds against claims for intentional discrimination. *Isenhart v. General Cas. Co.*, 233 Or 49, 377 P2d 26 (1962), states the governing principle:

> "[A] clause in a contract of insurance purporting to indemnify the insured for damages recovered against him as a consequence of his intentional conduct in inflicting injury upon another is unenforceable by the insured on the ground that to permit recovery would be against public policy." *Id.* at 53.

In applying that principle, "the obligation of the insurer to defend is to be determined by the allegations of the complaint filed against the insured." *Id.* at 54 (footnote omitted).

*Nielsen v. St. Paul Companies*, 283 Or 277, 583 P2d 545 (1978), reiterated that

"[i]nsurance coverage for the protection of one who intentionally inflicts injury upon another is against public policy, and whether the insurer is relieved for this reason from the defense of an action against its insured depends upon the allegations of the complaint." *Id.* at 280-81 (citation omitted).

The court further explained:

"It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed for the purpose of inflicting injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches.

"There are some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure. * * * Mere unlawfulness of the acts does not raise any necessary implication that it was the actor's intention to injure." *Id.* at 281 (citations omitted).

In *Sch. Dist. No. 1 v. Mission Ins. Co.*, 58 Or App 692, 660 P2d 929 (1982), *rev den* 294 Or 682 (1983), we considered whether claims of employment discrimination were covered under the District's comprehensive general liability insurance policy. One of the defendant insurers, invoking *Isenhart* and *Nielsen*, argued that public policy precluded coverage "for deliberate violations of the laws prohibiting discrimination in employment." 58 Or App at 699. In addressing that argument, we quoted with approval the United States Supreme Court's description of the distinction between "disparate treatment" discrimination and "disparate impact" discrimination:

" ' "Disparate treatment" * * * is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. * * *

'Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involves employment practices that are facially neutral in their treatment of different groups but that in fact fall more

harshly on one group than on another and cannot be justified by business necessity. * * * Proof of discriminatory motive, we have held, is not required under a disparate impact theory. * * *" " *Id.* at 700 (quoting *Teamsters v. United States*, 431 US 324, 335-36 n 15, 97 S Ct 1843, 52 L Ed 2d 396 (1977)).

We concluded that, although "disparate treatment" discrimination claims necessarily alleged intentional injury, "disparate impact" claims did not necessarily embody such an allegation:

"Discrimination by disparate treatment means treating an individual less favorably *because* of that individual's race, sex, color, religion, or national origin. It is the injury which must be intended.

"However, claims of discrimination based on disparate impact, which do not require a showing of discriminatory intent, could encompass actions, judgments or decisions that might be considered negligent acts, errors or omissions under the policy." *Id.* at 701 (emphasis in original; footnote omitted).

Given that conclusion, we determined that claims of disparate treatment discrimination did not fall within the policy's express coverage for "any negligent act, error or omission of the insured," but that claims of disparate impact were within the policy's coverage. Because we concluded that the policy did not, by its terms, cover intentional discrimination, we did not resolve the question of "whether intentional discrimination would be uninsurable as a matter of policy." *Id.* at 701 n 4.

■ We now reach the question expressly reserved in *School District No. 1* and conclude that public policy precludes insurance coverage of claims alleging "disparate treatment" discrimination. Such discrimination necessarily implicates an intention to injure. As we noted in *School District No. 1*, such discrimination "means treating an individual less favorably *because*" of some legally protected status. 58 Or App at 701 (emphasis in original). *Falkenstein's Meat Co. v. Maryland Casualty Co.*, 91 Or App 276, 280, 754 P2d 621 (1988), is instructive. There, we held that a claim that the

insured employer had engaged in retaliatory and discriminatory conduct against an employee in violation of ORS 654.062(5)(a), the occupational safety "whistle blower" statute, was not covered under the terms of the employer's comprehensive general liability insurance policy. We so concluded despite the fact that the employee's complaint did not explicitly allege that the employer intended the harm that occurred as a result of the discriminatory conduct:

> "The complaint does not allege a specific type of intentional harm. However, retaliatory and discriminatory conduct pursuant to ORS 654.062(5)(a) are acts from which an intention to cause harm must necessarily be inferred. When an employer retaliates against or discriminates against an employee in violation of ORS 654.062(5)(a), the natural and intended consequence is to cause some type of harm to the employe." *Id*. at 280 (citations omitted).

■ The same is true of a claim of "disparate treatment" housing discrimination. The "natural and intended consequence" of such discrimination is to "cause some type of harm" to the putative renter or purchaser based on his or her legally protected status. Such a claim alleges conduct "from which an intention to cause harm must necessarily be inferred." *Id*.[5] Thus, public policy precludes insurance coverage of such claims.

Our inquiry thus narrows to whether Sifuentes' complaint alleged a claim of "disparate treatment," as opposed to "disparate impact," housing discrimination. The pertinent allegations of Sifuentes' draft complaint, which accompanied her original demand letter, stated:

> "10. On or about November 16, 1992, defendants refused to rent, *refused to negotiate for the rental of, and otherwise made unavailable and denied to plaintiff a one-bedroom unit in the Cabana Apartments because she has a child.*

---

[5] *Cf. Ron Tonkin Chevrolet Co. v. Continental Ins. Co.*, 126 Or App 712, 870 P2d 252 (1994) (insurance policy covered claim of "religious accommodation" employment discrimination because "religious accommodation employment discrimination need not be intentional"; noting, without commenting on, the parties' agreement that "liability for intentional discrimination is not insurable, * * * but that liability for unintentional discrimination is insurable").

"11.  In doing the acts and conduct herein complained of, defendants acted intentionally and maliciously and were guilty of wilful and wanton disregard of plaintiff's rights.

"* * * * *

"13.  Defendants violated §3604(a) of the Fair Housing Act, 42 USC §3601 *et seq.*, by refusing to rent or negotiate for the rental of an apartment and otherwise making an apartment unavailable to plaintiff because of her familial status." (Emphasis supplied.)

The pertinent allegations of the federal court discrimination claim, which plaintiffs ultimately settled, stated:

"11.  On or about November 15, 1992, Mary Sifuentes was seeking a rental unit for herself and her seven month old child. She contacted defendants about an available apartment at the Cabana Apartments, which the defendants had advertised, and was told by defendant, JoAnn Huth, that she could see the apartment the following day. When Ms. Sifuentes visited the Cabana Apartments the following day, defendant JoAnn Huth told her, after showing her an available apartment on the second floor of the complex, that she could not rent *a second floor apartment because the defendants did not rent second floor apartments to families with children.*

"12.  By their conduct set forth in paragraph 11, defendants have:

> "(a)  Refused to rent, or otherwise made unavailable, a dwelling to Mary Sifuentes because of her familial status, in violation of 42 U.S.C. §3604(a);
>
> "(b)  Discriminated in the terms and conditions of rental in violation of 42 U.S.C. §3604(b); and
>
> "(c)  Made statements with respect to the rental of a dwelling indicating a preference, limitation or discrimination because of familial status, in violation of 42 U.S.C. §3604(c).

"* * * * *  .

"14.  The discriminatory actions of the defendants were intentional, willful, and taken in disregard for the rights of Mary Sifuentes." (Emphasis supplied.)

Defendant asserts that those allegations facially state a claim of "disparate treatment" discrimination. That is, unlike a "disparate impact" claim, which asserts that the application of a facially neutral practice or policy has resulted in some discriminatory effect, Sifuentes' complaints alleged the application of a policy that was explicitly based on a forbidden consideration, *i.e.*, "familial status":

> "[Sifuentes] specifically alleged that plaintiffs discouraged her from applying for a vacant apartment because, as a matter of policy, they don't rent upstairs apartments to people with small children. That is not a facially neutral policy. It is a facially discriminatory policy. The policy, on its face, applies only to the class the law is designed to protect: people with children who need housing. In that regard, plaintiffs' policy is no different than a policy of refusing to rent to women or Jews or Native Americans. By adopting and enforcing the policy, plaintiffs engaged in intentional discrimination[.]"

■     We agree. Plaintiffs' policy was not framed in facially neutral terms, such as refusing to rent to persons who presented safety or noise concerns. Instead, the policy was applied, without distinctions for individual circumstances, to all persons falling within a statutorily protected class. That is the essence of "disparate treatment" discrimination. Because public policy precludes insurance coverage of such discrimination, defendant cannot be liable for failing to defend or indemnify plaintiffs against Sifuentes' claims. *See Isenhart*, 233 Or at 53.[6]

Affirmed.

---

[6] *See also Ranger Ins. Co. v. Bal Harbour Club*, 549 So 2d 1005 (Fla 1989) (Florida public policy prohibits insurance indemnification for loss resulting from alleged housing discrimination based on religion).