Argued and submitted November 3, 1997, decision of Court of Appeals and
judgment of circuit court affirmed August 12, 1999

Joel C. GROSHONG,
Joann Huth and Gary Huth,
*Petitioners on Review,*

*v.*

MUTUAL OF ENUMCLAW INSURANCE COMPANY,
a Washington corporation,
*Respondent on Review.*

(CC 9407-04901; CA A89325; SC S43912)

985 P2d 1284

Michael A. Lehner, of Lehner, Mitchell, Rodrigues & Sears, Portland, argued the cause and filed the brief for petitioners on review. Edward L. Sears, of Lehner, Mitchell, Rodrigues & Sears, Portland, filed the petition for review.

Thomas M. Christ, of Mitchell, Lang & Smith, Portland, argued the cause and filed the briefs for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

CARSON, C. J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision.

## CARSON, C. J.

In this case, we are asked to decide whether an insurance policy that defendant issued provides coverage for a claim of housing discrimination made by a prospective tenant against the insured plaintiffs. After a trial on stipulated facts, the trial court entered judgment for defendant, concluding that the terms of the policy did not cover the prospective tenant's claim. The Court of Appeals affirmed the trial court's judgment. *Groshong v. Mutual of Enumclaw Ins. Co.*, 143 Or App 450, 923 P2d 1280 (1996). That court, however, did not base its decision upon the wording of the policy. Instead, the court concluded that, because the prospective tenant's claim alleged *intentional* housing discrimination, the public policy consideration that prohibits insuring against injuries that intentionally are inflicted precluded defendant from defending or indemnifying against that claim. *Id.* at 456-61.

We allowed review and now conclude, as did the trial court, that the terms of the insurance policy did not provide coverage for the housing discrimination claim. Accordingly, we do not address the public policy argument upon which the Court of Appeals relied. We affirm the decision of the Court of Appeals and the judgment of the trial court.

We take the following facts from the parties' stipulation. Plaintiff Groshong owns a two-story apartment complex in Portland. He employed plaintiffs JoAnn and Gary Huth to manage the apartments.

Defendant was Groshong's insurer and issued to him a "special businessowner's" policy of insurance. That policy provided, in part:

> "The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury**, **property damage** or **personal injury** caused by an **occurrence** to which this insurance applies."

The policy further provided:

> "**[O]ccurrence** means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured** and with respect to **personal injury**, the commission of an offense, or a series of similar or related offenses;
>
> "**[P]ersonal injury** means injury which arises out of one or more of the following offenses committed in the conduct of the **named insured's** business:
>
> "\* \* \* \* \*
>
> "(c)   wrongful entry or eviction, or other invasion of the right of private occupancy[.]"

(Boldface type in original.)

In November 1992, a prospective tenant, the mother of a small child, responded to a newspaper advertisement for the rental of an apartment on the second floor of the complex. While showing the apartment to the prospective tenant, JoAnn Huth stated that the complex did not allow small children to live on the second floor due to safety concerns. At that time, there were no ground-floor apartments available.

Several months later, Groshong received a letter and draft complaint from a lawyer representing the prospective tenant. The draft complaint alleged claims of familial status discrimination under federal housing laws. Groshong tendered the claim to defendant for defense under the policy, and defendant rejected the tender.

The prospective tenant's discrimination claim ultimately proceeded to litigation, naming both Groshong and the Huths as defendants. At various stages during the proceedings, Groshong again tendered the claim to defendant. Each time defendant rejected the tender. Plaintiffs later settled the prospective tenant's claim. Defendant stipulated that the settlement was reasonable and that plaintiffs had performed all conditions required of them under the policy.

Plaintiffs then brought this action against defendant for breach of contract.[1] Defendant responded by arguing,

---

[1] The policy identified Joel and Barbara Groshong as the named insureds under the policy. The policy, however, also defined "insured" to include "any

among other things, that the underlying claim—housing discrimination under federal law—did not allege "personal injury" within the meaning of the insurance policy, because the claim was not one for an "other invasion of the right of private occupancy." Defendant further argued that public policy prohibited insuring against a claim of *intentional* housing discrimination. The trial court agreed with defendant's first argument and entered judgment accordingly. As noted, the Court of Appeals affirmed, but did so based upon defendant's public policy argument. *Groshong*, 143 Or App at 456-61. That court did not address whether the policy covered the prospective tenant's claim. *Id.* at 455.

On review, the parties have briefed both the public policy question and the question whether the prospective tenant's claim constituted a "personal injury" under the terms of the policy. We begin our inquiry with the question presented under the terms of the policy and will address the public policy argument only if we conclude that the policy covers the claim. *See A-1 Sandblasting v. Baiden*, 293 Or 17, 19-20, 643 P2d 1260 (1982) (examining wording of policy before addressing public policy considerations). As noted, we conclude that the policy does not provide coverage.

The analytical framework for construing the terms of an insurance policy is set out in *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-71, 474-75, 836 P2d 703 (1992). The question of policy interpretation is one of law, *id.* at 469, and our task is to determine the intent of the parties, *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985). We determine the parties' intent from the terms and conditions of the policy. *Interstate Fire v. Archdiocese of Portland*, 318 Or 110, 117, 864 P2d 346 (1993).

Plaintiffs argue that the prospective tenant alleged a claim for personal injury based upon an "other invasion of the right of private occupancy." Therefore, we must ascertain the meaning of that quoted phrase as it is used in the policy. The policy, however, offers no definition. Accordingly, we resort to

employee of the named insured while acting within the scope of his duties as such." (Boldface type omitted.) The parties stipulated that, at all relevant times, the Huths were Joel Groshong's employees and were acting within the course and scope of their employment.

various aids of interpretation to discern the parties' intended meaning. *See Hoffman,* 313 Or at 469 (turning to such aids when policy did not define term at issue).

The first aid to interpretation is determining whether the term at issue has a *plain* meaning. *See ibid.* (so demonstrating). The meaning of a term is "plain"—that is, unambiguous—if the term is susceptible to only one plausible interpretation. *See id.* at 469-70 (so demonstrating). If so, then the parties' intent conclusively is established, and our interpretive inquiry is at an end. However, as the court noted in *Hoffman,* establishing the plain meaning of a term at this level of analysis—that is, showing that the term is *not* susceptible to competing plausible interpretations—may be difficult:

> "[G]iven the breadth and flexibility of the English language, the task of suggesting plausible alternative meanings is no challenge to capable counsel."

*Id.* at 470. We turn, then, to the question whether the phrase "other invasion of the right of private occupancy" has a plain meaning.

Plaintiffs argue:

> "[T]he language is not limited to claims arising out of possessory interest in property. In the context of this case, plaintiffs argue that the insurance policy encompasses claims made by prospective tenants who have been denied the right to occupy an apartment because of rental policies that have a discriminatory impact. * * *"

Plaintiffs continue that:

> "Defendant's interpretation should be rejected because it renders part of the definition of personal injury meaningless. If coverage is limited to rights of occupancy associated with entry into a tenant's premises, or eviction of a tenant, the phrase 'other invasion of the right of private occupancy' would add nothing to the policy and would be meaningless. * * *"

Defendant, in turn, argues that the plain meaning of the phrase does not encompass housing discrimination claims:

"As a would-be tenant, not an actual tenant, [the prospective tenant] had no right of occupancy that could be invaded. * * * [S]he left the [apartment complex] without even applying for the vacant apartment, let alone obtaining it, after Ms. Huth informed her of the no-kids-upstairs policy. Thus, she was neither occupying the apartment nor entitled to occupy it at the time of the alleged discrimination."

Stated differently, defendant argues that "other invasion of the right of private occupancy" can refer only to claims affecting either an actual possessory interest in property or an entitlement to such an interest. Neither of those circumstances, defendant asserts, were at issue in the prospective tenant's action.

Defendant also argues that construing the phrase "other invasion of the right of private occupancy" to include only claims involving a possessory interest in property would *not* render that phrase redundant of, or superfluous to, claims for "wrongful entry or eviction." Defendant lists several examples of claims for which the phrase at issue exclusively would apply. They include claims for interrupting services to a tenant's dwelling (water, heat, electricity, etc.) and claims for allowing disruption of a tenant's right to quiet enjoyment.

Defendant further argues that plaintiffs' proffered construction would require the court to give the words "right" and "occupancy" within the phrase "strained or unlikely meanings":

"A person viewing a vacant apartment does not 'occupy' the apartment, nor does she have a 'right' to occupy it. A 'right' is a legally enforceable claim of one person against another. A right of occupancy, therefore, is a legally enforceable claim to possession of property to the exclusion of all others, including the owner. * * *"

Finally, defendant argues that the phrase applies, by its terms, only to invasions of the right *of* private occupancy, not the right *to* private occupancy. The latter formulation, defendant suggests, could imply a right *to obtain* occupancy, which arguably underlay the prospective tenant's

claim. Defendant argues that the former formulation, however, which expresses the actual wording of the policy, presupposes an existing right of occupancy and, therefore, cannot support plaintiffs' suggested interpretation. That is so, defendant contends, because housing discrimination laws do not confer upon a prospective tenant an entitlement to occupy a dwelling but, rather, only prohibit landlords from denying tenancy based upon prohibited criteria. Continuing with that argument, defendant notes that, even if plaintiffs had not discriminated against the prospective tenant, she still might have been denied the apartment. For example, she might have had a poor credit or rental history, had insufficient funds for a deposit, or otherwise might have been unqualified (for nondiscriminatory reasons) to rent the apartment.

On the question whether defendant's proffered interpretation would render the phrase meaningless, defendant has the better argument. As noted, defendant has identified other claims for which the phrase—even if construed as defendant suggests—would apply exclusively. Plaintiffs have not rebutted that argument. The question remains, however, whether the phrase, which we have concluded is meaningful, admits by its terms of but one plausible interpretation. As discussed below, we conclude that it does not.

Analyzing the words of the phrase "other invasion of the right of private occupancy" suggests, but does not demonstrate conclusively, that the parties intended to limit that phrase to possessory contexts. For example, the dictionary first defines the term "invasion" as "a hostile entrance or armed attack on the property or territory of another for conquest or plunder." *Webster's Third New Int'l Dictionary*, 1188 (unabridged ed 1993). That definition supports defendant's reading of the phrase, *viz.*, that the phrase pertains only to offenses involving possessory interests. The dictionary, however, also defines the term, in part, as "an encroachment upon a right protected by law affording grounds for an action for damages or some other remedy." *Ibid.* That definition lends support to plaintiffs' proffered interpretation.

Use of the term "private occupancy" likewise supports defendant's construction, but not conclusively so. Read

in isolation, the term strongly connotes possessory-like interests. *See Webster's Third New Int'l Dictionary* at 1560, 1804 (defining "occupancy," in part, as "the taking and holding *possession* of real property under a lease or tenancy at will" (emphasis added) and defining "private," in part, as "intended for or restricted to the use of a particular person or group or class of persons"). That analysis, however, is incomplete, because the term does not exist in isolation. Instead, "private occupancy" is the object of the preposition "of" that precedes it. Thus, even accepting the dictionary definitions, the question remains whether a "possessory" right of private occupancy is limited to circumstances in which the right already exists (*i.e.*, the tenant *has* possession, which was not presented by the prospective tenant's complaint) or also includes an entitlement to establish a possessory private occupancy in the future (which, at least arguably, underlay the prospective tenant's complaint).

As noted, defendant has addressed that ultimate question and focuses upon the fact that the phrase refers to the "right *of* private occupancy," rather than the "right *to* private occupancy." We agree that use of the word "to" would have strengthened plaintiffs' position. We also note that the policy could have been made more explicit in other respects as well, if the parties actually had intended the broader meaning that plaintiffs advocate.[2] Those arguments notwithstanding, we do not agree that the term "private occupancy" and the prepositional phrase within which it occurs establishes a simple, plain meaning. Although demonstrably less plausible than defendant's interpretation, plaintiffs' reading of "right of private occupancy" to include future possessory interests is not *implausible*.

In sum, in examining only the wording of the phrase at issue, we cannot state that plaintiffs' proffered interpretation is unreasonable. To the analysis above, we also note, and deem it significant, that the policy neither defines the phrase "right of private occupancy" nor expressly states that the phrase is limited to claims involving a possessory interest. Absent such qualification, and in light of the actual wording

---

[2] For example, the phrase could have been written to provide "other invasion of the right of private occupancy, *whether possessory or non-possessory*," or "other invasion of the right of private occupancy *or the right to rent premises*."

of the phrase, we cannot conclude our interpretive inquiry at this level. The phrase reasonably could be read to include claims that an insured landlord unlawfully had denied a prospective tenant an opportunity to rent a dwelling.

Because we have determined that the meaning of the phrase at issue is not, on its face, plain, we proceed to our second aid to interpretation. That is, we examine the phrase in light of "the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or at 470; *see also id.* at 474-75 (applying principle). Here, examining the phrase in its context resolves, to our satisfaction, the question whether the parties intended the phrase to provide coverage for claims of housing discrimination. For the reasons that follow, we conclude that they did not.

The sentence in which the phrase occurs states:

"[P]ersonal injury [includes] the following offenses * * *.

"* * * * *

"(c) wrongful *entry* or *eviction*, or *other* invasion of the right of private occupancy[.]"

(Boldface type omitted; emphasis added.) Viewed contextually, the phrase at issue here does not stand in isolation. Instead, the phrase is tied to the wording that precedes it by the word "other." The word "other" is one of common usage, and its meaning generally is understood. The dictionary defines the word "other," in part, as

"being the one (as of two or more) left : not being the one (as of two or more) first mentioned or of primary concern : REMAINING * * * being the ones distinct from the one or those first mentioned or understood * * * SECOND * * * DIFFERENT, DISTINCT * * * MORE, ADDITIONAL."

*Webster's Third New Int'l Dictionary* at 1598. The question, then, is whether the parties intended "*other* invasions of the right of private occupancy" (emphasis added) to refer to claims distinct from *or* claims in addition to claims for "wrongful entry or eviction." The dictionary definition alone, which embraces both interpretations, does not resolve the ambiguity.

A legal dictionary, however, expands on the general definition of "other" quoted above:

> "Following an enumeration of particular classes 'other' must be read as 'other such like,' and includes only others of like kind and character."

*Black's Law Dictionary*, 1101 (6th ed 1990). That statement is a derivation of the Latin maxim *"ejusdem generis"* (of the same kind), which this court has restated as follows:

> "Basically, the rule provides that when general words follow an enumeration of specific persons or things, the general words are not construed in their widest extent, but are applied only to persons or things of the same general kind or class as those specifically enumerated. * * *"

*McGrath v. Electrical Const. Co.*, 230 Or 295, 307, 364 P2d 604 (1962).

■■ Although most commonly employed by courts when interpreting constitutional or statutory enactments, the maxim has utility in a contractual context as well. *See, e.g., ibid.* (applying principle in interpreting construction contract); *U.S. Fid. & Guar. Co. v. Thomlinson Co.*, 172 Or 307, 318-19, 141 P2d 817 (1943) (stating that principle "has, of course, been applied with some qualifications to the construction of contracts" and applying principle in interpreting bond). Also, and importantly, this court has stated that "the rule of *ejusdem generis* in contracts is peculiarly applicable where specific enumeration precedes the word 'other' followed by general words." *McGrath*, 230 Or at 307. We deem it appropriate to apply the maxim here.

Again, standing alone, it is not entirely clear that the phrase "other invasion of the right of private occupancy" embraces only claims that involve possessory interests. It is clear, however, that claims for "wrongful entry or eviction" are so limited. Stated differently, a person cannot suffer a wrongful entry or eviction until that person actually occupies—or at least has a legally cognizable possessory interest in—a particular premises. Therefore, use of the term "other" to connect the phrase "invasion of the right of private occupancy" to the wording that precedes it satisfies us that the

parties intended that such invasion also be limited to claims that involve a possessory interest in the premises.

■     In light of our examination of both the wording of the phrase at issue and the context in which that wording occurs, plaintiffs' proffered interpretation no longer is plausible. Further resort to interpretive aids, therefore, is unnecessary. As used in defendant's policy, the phrase "other invasion of the right of private occupancy" applies only to offenses that involve a possessory interest in the premises at issue. It follows that plaintiffs are not entitled to coverage.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.