Argued and submitted September 23, affirmed December 3, 2008, petition for review denied March 26, 2009 (346 Or 115)

CAIN PETROLEUM INCORPORATED,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

ZURICH AMERICAN INSURANCE COMPANY,
a foreign insurance company doing business in Oregon,
*Defendant-Respondent,*

*and*

OREGON INSURANCE GUARANTY ASSOCIATION,
an Oregon association;
United National Insurance Company,
a foreign insurance company doing business in Oregon;
Admiral Insurance Company,
a foreign insurance company doing business in Oregon;
Stonewall Insurance Company,
a foreign insurance company doing business in Oregon;
American Economy Insurance Company,
a foreign insurance company doing business in Oregon,
*Defendants.*

Multnomah County Circuit Court
030504907; A134133

197 P3d 596

Helen C. Tompkins argued the cause for appellant. With her on the briefs was Mary Ellen Page Farr.

Brent J. Graber, Chicago, argued the cause for respondent. With him on the brief were Margaret Fiorino and Meckler Bulger & Tilson, LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

The issue in this declaratory judgment proceeding is whether an insurance policy that defendant Zurich American Insurance Company provided to plaintiff provides coverage for losses caused by releases of gasoline from certain underground storage tanks located on plaintiff's property. The trial court concluded that, under the unambiguous terms of the policy, no coverage is available. Plaintiff appeals, arguing that the insurance policy is ambiguous and, as a result, must be interpreted in favor of coverage. In the alternative, plaintiff argues that defendant should be estopped from arguing that its policy does not provide coverage because it asserted a different interpretation of a similarly worded policy in another jurisdiction. We affirm.

The relevant facts are uncontested. Plaintiff is a company that operates gasoline stations in Oregon. In 2001, it obtained a policy of insurance from defendant, denominated a "Storage Tank System Third Party Liability and Cleanup Policy," which provided coverage during the period from July 22, 2001 through July 22, 2002. The meaning of the terms of that policy are at issue in this case, so we set out the relevant provisions in some detail.

In its introductory paragraphs, the policy states that "[t]his policy is location-specific and storage tank system-specific: only 'scheduled storage tank system(s)' at 'scheduled location(s)' are covered." Consistently with that introduction, the policy next sets out two categories of coverage:

**"COVERAGE A: FIRST PARTY CLEANUP DISCOVERY**

"We will pay on behalf of the 'insured' any 'cleanup costs' required by 'governmental authority' as a result of a 'release(s)' that 'emanates from' a 'scheduled storage tank system(s)' at a 'scheduled location,' that commences on or after the 'retroactive date' and is first discovered by the 'insured' during the 'policy period,' provided the 'claim' is reported to us during the 'policy period,' or any applicable extended reporting period. * * *

**"COVERAGE B: THIRD PARTY LIABILITY**

"We will pay on behalf of the 'insured' any 'loss' caused by a 'release(s)' that 'emanates from' a 'scheduled storage tank system(s)' at a 'scheduled location,' that commences on or after the 'retroactive date,' and that the 'insured' is legally obligated to pay as a result of 'claim(s)' first made against the 'insured' during the 'policy period' provided that the 'claim' is reported to us during the 'policy period,' or any applicable extended reporting period[.]"

(Boldface and capitalization in original.) Important for our purposes is the fact that, under both categories, coverage is limited to cleanup costs or losses caused by releases from a "scheduled storage tank system(s)" at a "scheduled location" after a "retroactive date."

The policy supplies definitions of each of those quoted terms. The term "scheduled location" is defined to mean "the property(ies) designated in the Declarations or by endorsement onto this policy." Attached to the policy is a "Site Schedule," which lists by location number and street address 17 different locations, along with the number of tanks at each location, the capacity, and the date of installation. Among the locations specifically listed in the schedule is the address "833 Baseline, Hillsboro, OR." Three tanks are listed for that location—with capacities of 15,000, 8,000, and 6,000 gallons—which were installed in 1994.

The policy defines the term "scheduled storage tank system(s)" as a tank that plaintiff owns or operates and that is "identified in the Declarations or applicable Endorsement and described in the Application." As we have noted, the "Site Schedule" attached to the policy identifies each of the tanks at each of the covered locations. In addition, plaintiff's application includes a "Tank Schedule" for each of the 17 locations. The locations are identified by street address. On the schedule for the location at 833 Baseline in Hillsboro, there are three tanks listed—with capacities of 15,000, 8,000, and 6,000 gallons—which were installed in 1994. The application also specifies the type of leak detection systems that each tank employs.

Finally, the policy defines "retroactive date" to mean "the date set forth in the Declarations and is the earliest date

that a 'release' can commence for coverage to be provided under this policy." On plaintiff's application for insurance, plaintiff was given the choice of selecting a release date of "policy inception" or some "other" date, with the opportunity to explain the alternative date. Plaintiff checked the "other" box and inserted the words "Per Existing Site Schedule" in the explanation area of the form. The Site Schedule that is attached to the policy itself (and lists the location addresses, tanks capacities, and installation dates) lists various retroactive dates for different locations. The retroactive date that is listed for the location at 833 Baseline in Hillsboro is July 22, 1991.

On May 15, 2002, the Oregon Department of Environmental Quality (DEQ) issued to plaintiff a "Notice of Violation, Department Order and Assessment of Civil Penalty." The basis for the notice was DEQ's determination that gasoline had leaked from underground storage tanks located at the 833 Baseline property in Hillsboro. It was later determined that the leaks did not come from any of the three newer tanks identified on the Tank Schedule of the policy. Those newer tanks had leak detection systems, and no leaks had been detected from any of them since they had been installed. Rather, the leaks came from older tanks not listed on the Tank Schedule, which had been replaced or decommissioned. The issue in this case is whether plaintiff's underground storage tank insurance policy covers cleanup costs or other losses resulting from releases from those older tanks not listed on the Tank Schedule.

Plaintiff made a claim under the policy for the cleanup costs and losses resulting from the leaks of the older tanks. It also tendered its defense against the enforcement action. Defendant refused to defend or provide coverage. Plaintiff then initiated this action, seeking a declaration that it is entitled to coverage under the policy and also seeking damages and attorney fees. Defendant answered, alleging a number of affirmative defenses, including that its obligation to provide coverage is limited to cleanup costs or losses from releases from "scheduled storage tank systems" at "scheduled locations." The releases in this case, defendant alleged, were from tanks other than those on the schedules of covered storage tank systems.

Plaintiff moved for summary judgment as to defendant's asserted defense that the releases were not from a "scheduled storage tank system" within the meaning of the policy. Defendant filed a cross-motion for summary judgment as to the same defense.

Plaintiff's argument proceeded as follows. Plaintiff acknowledged that coverage is limited to releases from "scheduled storage tank systems" at "scheduled locations" after the "retroactive date." Plaintiff asserted that the policy was irremediably ambiguous in that its treatment of the "retroactive date" made no sense. According to plaintiff, the retroactive date was essentially meaningless because, in the case of the 833 Baseline property, the retroactive date—1991—preceded the installation date—1994—by three years. That means, plaintiff contended, that it is at least theoretically possible for a covered leak to occur before the tank was even installed. Because of that ambiguity, plaintiff asserted, Oregon law requires the policy to be construed in favor of coverage. In the alternative, plaintiff argued that defendant should be judicially estopped from taking a contrary position in this case because, in an Alaska case, *Zurich American Ins. v. Whittier Properties*, 356 F3d 1132 (9th Cir 2004), involving one of its underground storage tank policies, defendant took the position that its policy covered tanks not specifically listed on the schedule, as long as releases occurred after the retroactive date.

Defendant responded that there is no ambiguity in the agreement and that plaintiff's proposed reading of the policy to require coverage directly conflicts with the express wording that limits coverage to *scheduled* storage tank systems. The retroactive date, defendant pointed out, was a matter of plaintiff's own choosing and, as a result, could hardly be a legitimate basis for creating an ambiguity in the policy. In any event, defendant argued, there is nothing ambiguous about the retroactive date; the policy simply does not cover cleanup costs or other losses from releases before that date. As for the claim of judicial estoppel, defendant argued that the policy at issue in the Alaska case was different and, in any event, because it did not prevail in that action, principles of judicial estoppel do not apply.

The trial court agreed with defendant. The court concluded that, as a matter of law, "there's no ambiguity that the intent of the parties here was to limit policies to the storage tanks that are specifically scheduled here." The court granted defendant's motion, denied plaintiff's motion, and entered judgment accordingly.

■ On appeal, plaintiff contends that the trial court erred in granting defendant's summary judgment motion and in denying plaintiff's motion. Plaintiff's argument is essentially the same as the one that it advanced to the trial court, *viz.*, that, because the policy is ambiguous as to the purpose of the "retroactive date," the policy "should be interpreted to cover releases which emanated from tanks at scheduled locations, including the listed tanks, *and including prior tanks*, so long as the release occurred after the retroactive date." (Emphasis added.) In the alternative, plaintiff reiterates its judicial estoppel argument, based on what it contends was defendant's inconsistent position in the earlier Alaska case. Defendant likewise advances the same arguments that it offered to the trial court, both as to the supposed ambiguity in the policy and as to the applicability of the doctrine of judicial estoppel.

■■ The determination of the meaning of the terms of a policy of insurance presents a question of law. *St. Paul Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 192, 923 P2d 1200 (1996). The task in determining the meaning of a policy is to ascertain the intent of the parties, *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985), based on the wording of the policy itself, *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307, 985 P2d 1284 (1999).

■ In *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992), the Supreme Court set out an analytical framework for determining from the wording of a policy the meaning of its terms that the parties intended. We are required to examine the wording of the policy to determine whether it is ambiguous. *Id.* at 469-70. If the policy is not capable of more than one reasonable construction, then we apply the policy according to its unambiguous terms. *Id.* But, if the policy is ambiguous, we are required to apply

the rule that insurance policies are to be construed against the drafter. *Id.* at 470-71.

■■■ "Ambiguity" is a term of art; in the context of construing an insurance policy, it refers to the existence of multiple, *reasonable* interpretations of the policy wording in the light of the context in which the disputed provisions are employed and in the context of the policy as a whole. *Id.* at 470. To qualify as a "reasonable" construction, a proposed reading of the policy must, at the least, be consistent with the wording; conversely, if a proposed interpretation would require us to disregard any provision of the policy, it is not reasonable, as a matter of law. *Id.* at 474-75.

In this case, there is no debate about the reasonableness of defendant's reading of the policy to provide coverage only for "scheduled storage tank systems," namely, those listed in the Tank Schedule. That is, after all, precisely how the policy itself defines the term.

The only question is whether plaintiff has proposed an alternative reading of the policy that also is reasonable. Plaintiff notes that the retroactive date for the 833 Baseline location in Hillsboro is July 22, 1991, while the installation date for the tanks on the same property is 1994. That is anomalous, plaintiff contends, because it means that the retroactive date—the date before which releases will not be covered—actually precedes the date of installation by several years. Because the retroactive date precedes the installation date, plaintiff reasons, it follows that the policy was intended to cover *other* storage tanks than the ones listed in the Tank Schedule. Or at least, plaintiff contends, that is a plausible construction of the policy's terms.

The problem is that plaintiff's proposed construction is not plausible. It may, indeed, be the case that—at least with respect to the three tanks at the 833 Baseline location in Hillsboro—the uniform retroactive date that plaintiff itself selected becomes superfluous. The fact remains, however, that the interpretation of the policy that plaintiff proposes is directly contradicted by the express wording of the policy that "[t]his policy is location-specific and storage tank system-specific: only 'scheduled storage tank system(s)' at 'scheduled location(s)' are covered." As we have noted, a "reasonable"

interpretation of an insurance policy, at a minimum, must not be contradicted by the terms of that policy. Plaintiff's proposed interpretation does not satisfy that minimum requirement. As a result, there is no occasion to apply the rule of construction that ambiguous insurance policies are construed against the drafter.

Plaintiff's reliance on the doctrine of judicial estoppel is unavailing, as well. According to that doctrine, a party who has benefitted from one representation in an earlier proceeding and then makes an inconsistent representation in a later proceeding may be estopped from taking the later, inconsistent position. *Sugar and Sugar*, 212 Or App 465, 470, 157 P3d 1263 (2007).

In this case, plaintiff contends that defendant took such an inconsistent position in *Zurich American Ins.*, an Alaska case in which the issue was the meaning of one of defendant's insurance policies that provided coverage for "storage tank systems." According to plaintiff, in *Zurich American Ins.*, defendant took the position that the policy applied to all tanks from which releases occurred after a designated release date, not just those tanks listed on a tank schedule. Defendant responds that the policy language in *Zurich American Ins.* was different, lacking any reference to a "*scheduled* storage tank system," as defined in the policy at issue in this case. Moreover, defendant argues, judicial estoppel does not apply, because it *lost* in *Zurich American Ins.* and did not benefit from whatever representation was made before the court in that case.

We need not determine the extent to which the wording of the policy in this case is sufficiently close to the wording of the policy in *Zurich American Ins.* to warrant application of judicial estoppel. Defendant is correct that, even if we assume that the policies are identical, the fact remains that defendant did not prevail on that argument in *Zurich American Ins.* Because plaintiff has failed to demonstrate any way in which defendant benefitted from any representations that it made to the court in *Zurich American Ins.*, we have no occasion to apply judicial estoppel. *See Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 611-12, 892 P2d 683 (1995) (declining to invoke judicial estoppel because there was no

showing that the opposing party benefitted from any contrary representations made in a prior proceeding).

We conclude, therefore, that the trial court did not err in granting defendant's summary judgment motion, in denying plaintiff's motion, and in entering judgment dismissing plaintiff's claim.

Affirmed.