Argued and submitted June 30, affirmed October 28, 2009

Rick L. RUEDE
and Rebecca Ruede,
husband and wife;
and West Coast Autobody, Inc.,
an Oregon corporation,
*Plaintiffs-Appellants,*

*v.*

CITY OF FLORENCE,
a municipal corporation;
Kalberer Properties, LLC,
an Oregon limited liability corporation;
ABRE, LLC,
an Arizona limited liability company;
Abby's, Inc.,
an Arizona corporation,
*Defendants,*

*and*

TRUCK INSURANCE EXCHANGE,
a Farmers Insurance Company,
*Defendant-Respondent.*

Lane County Circuit Court
160704170; A137660

220 P3d 113

Dan Webb Howard argued the cause for appellants. With him on the briefs was Gleaves Swearingen Potter & Scott, LLP.

Francis J. Maloney III, argued the cause for respondent. With him on the brief were Beth Cupani and Bullivant Houser Bailey PC.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this insurance dispute, plaintiffs filed a claim for property damage under a policy issued by defendant Truck Insurance Exchange. Defendant denied the claim on the ground that the damage was subject to various exclusions from coverage. Plaintiffs initiated this action for breach of contract. Defendant moved for, and obtained, summary judgment on the basis of the exclusions. Plaintiffs appeal, arguing that the trial court erred in granting the motion for summary judgment because defendant failed to demonstrate that any of the exclusions unambiguously apply. We conclude that at least one of the exclusions from coverage does unambiguously apply and therefore affirm.

The pertinent facts are undisputed. Plaintiffs Rick and Rebecca Ruede own West Coast Autobody, Inc. The business is located in a building in Florence, Oregon. The building consists of a concrete slab foundation and cinderblock walls. A four-foot-wide culvert runs under the building approximately 10 to 15 feet below the slab. The mouth of the culvert receives water from an undeveloped city-owned right of way on property bordering plaintiffs' property to the north and drains into a city-owned right of way to the south of plaintiffs' property.

During the period of July 1, 2005 to July 1, 2006, plaintiffs insured the building under a policy issued by defendant. The policy is an "all-risk" policy that covers any "direct physical loss or damage to Covered Property" that is not subject to an exclusion from coverage. "Covered Property," as described in the policy's declarations, includes the West Coast Autobody building. Among the exclusions from coverage are damage or loss caused by latent defects, settling, earth movement, and faulty workmanship. Pertinent to the disposition of this appeal is the exclusion for earth movement. In that regard, section B.1.b. of the policy provides:

"**Exclusions**

"**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

"* * * * *

"**b.    Earth Movement**

"* * * * *

"**(4)**    Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface."

(Boldface in original.) The policy further defines a "sinkhole collapse" as "the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite." The policy also includes additional coverage that applies even if any of the various exclusions otherwise apply. Relevant to this case is the provision for additional coverage for losses arising out of a "collapse":

"**1.**    With respect to buildings:

"**a.**    Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

"* * * * *

"**c.**    A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

"**d.**    A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion."

(Boldface in original.)

In the spring of 2006, during a period of heavy rainfall, plaintiff Rick Ruede noticed a pooling of water at the mouth of the culvert, indicating that the drainage was blocked. After the city removed a blockage from the drain to the south of plaintiffs' property, Ruede noticed a large quantity of clean white sand at the end of the pipe. An inspection of the culvert under plaintiffs' building revealed a gap

between two sections of the culvert, caused by a faulty connection. When the culvert had filled with water due to the plugged drainage pipe, sand and earth above the culvert and underneath plaintiffs' concrete slab sifted through the gap and into the culvert, where it washed away, creating large voids beneath the concrete slab. The lack of support eventually caused the slab to sink approximately seven inches, which, in turn, caused the walls to tilt and separate from the foundation.

Plaintiffs filed a claim against the policy, requesting the cost of repairing the underground culvert, excavating and refilling the voids beneath the building, and installing piers and support beneath the building to prevent further shifting and settling. Defendant denied the claim, contending that the loss was not covered because, among other things, the loss was caused by an excluded "cause of loss." Among the exclusions on which defendant relied was the exclusion for earth movement.

Plaintiffs then initiated this action, naming defendant, the city, and neighboring property owners as defendants. The operative complaint alleged that plaintiffs' loss was caused by the negligent and improper design, maintenance, and repair of the culvert system under plaintiffs' property and that defendant's denial of coverage and refusal to assume any responsibility under the insurance policy constituted a breach of contract.

Defendant moved for summary judgment. Defendant argued that, among other things, it was entitled to judgment as a matter of law on plaintiffs' breach of contract claim because their loss fell within various exclusions from coverage, including the exclusion for earth movement. The trial court agreed and entered a limited judgment dismissing plaintiffs' claim against defendant.

On appeal, plaintiffs assert that the trial court erred in granting defendant's summary judgment motion because their loss was not subject to any of the exclusions on which defendant relied, including the exclusion for earth movement. According to plaintiffs, that exclusion does not apply for two reasons. First, they contend, the exclusion does not apply to movement precipitated by human action. Second,

they argue, even if the exclusion does apply to such human-caused earth movement, it still does not apply because the exception expressly does not apply to "sinkhole collapse[s]." In addition, plaintiffs argue, even if their loss or damage is otherwise subject to the exclusion for earth movement, it still is subject to coverage under the additional coverage for "collapse" of their building.

Summary judgment is proper if there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. ORCP 47 C. In this case, the parties have identified no genuine issues of material fact; their sole dispute concerns the proper construction of the contract of insurance that plaintiffs obtained from defendant.

■ The construction of an insurance policy presents a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-71, 836 P2d 703 (1992). In interpreting the policy, our goal is to ascertain the intention of the parties. *Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 650, 147 P3d 329 (2006). In determining the parties' intent, we first examine the text of the policy to determine whether it is ambiguous, *i.e.*, whether it is susceptible to more than one plausible interpretation. If the policy has only one plausible meaning, we will apply that meaning and engage in no further analysis. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307-08, 985 P2d 1284 (1999). If, however, the policy has more than one plausible meaning, we will examine the disputed phrase in light of the particular context in which it is used and the broader context of the policy as a whole to determine the interpretation most likely intended. *Id.* at 312. If two or more interpretations continue to be reasonable, we will resolve any reasonable doubt against the insurance company. *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 25, 22 P3d 739 (2001).

■ One more point pertaining to burdens and standards of review is worth noting: It is plaintiffs' burden to establish that their claim is within an exception to an exclusion. *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 514, 156 P3d 105, *rev den*, 343 Or 363 (2007) (party seeking coverage bears burden to establish exception to exclusion).

■      In this case, the insurance policy expressly excludes loss or damage directly or indirectly caused by "earth movement," which the policy defines as "[e]arth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty." There is no dispute that the damage to plaintiffs' premises was caused by shifting soil conditions that caused settling of the foundation of their building. The exclusion appears plainly and unambiguously to apply to plaintiffs' loss.

Neither of plaintiffs' arguments to the contrary is plausible. The first is that the exclusion may fairly be read to apply only to earth movement caused by natural events, and not to human-caused earth movement, such as the culvert defect that caused the sifting of sand under the slab in this case. The problem is that plaintiffs' argument cannot be squared with the text of the exclusion, which lists at least one human-created cause—"improperly compacted soil"—among the excluded "soil conditions." Additionally, the sentence introducing the exclusion states that defendant will not pay for the described causes of loss or damage "regardless of *any other cause or event* that contributes concurrently or in any sequence to the loss." (Emphasis added.) On its face, that statement is broad enough to encompass human contributions to earth sinking.

Plaintiffs' second argument for avoiding the earth movement exclusion is that, even if their loss or damage was otherwise caused by "earth movement" within the meaning of the policy, that exclusion itself is subject to an exception for loss or damage caused by a "sinkhole collapse." In this case, plaintiffs contend, their damage or loss was plainly caused by a "sinkhole collapse." Once again, however, plaintiffs' argument runs afoul of the wording of the policy. As we have noted, the policy itself defines a "sinkhole collapse" as the "sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite." There is no evidence in the record on summary judgment that the sinking of plaintiffs' building was caused by "the action of water on limestone or dolomite."

Plaintiffs do not contest that there is a complete absence of evidence that their loss was caused by the action of water on limestone or dolomite. They nevertheless insist that the exception for loss or damage caused by a "sinkhole collapse" should apply because the ordinary meaning of the term is not as limited as the definition in the policy. Their theory is that the policy definition of "sinkhole collapse" does not actually apply to uses of the term in the same policy because, at least as it appears in the earth movement exclusion, the term is not surrounded by quotation marks. According to plaintiffs, the definitions included in the policy should be understood to apply only when the terms that are defined appear elsewhere in the policy surrounded by quotation marks.

■ Plaintiffs derive that argument from the fact that, at one point in the policy, it is noted that "words and phrases that appear in quotation marks have special meaning." From that statement in the policy, plaintiffs deduce that (1) only words of "special meaning" are defined in the policy; and (2) words and phrases that do not appear in quotation marks are not words of "special meaning." The deduction is logically fallacious (the fallacy of the undistributed middle, to be precise). More important, and more easily understood, is the fact that the term "sinkhole collapse" appears in the policy only two times, and, in both cases, it is *not* surrounded by quotation marks. Thus, were we to adopt plaintiffs' reasoning, we would be required to conclude that the definition of "sinkhole collapse" included in the policy is meaningless surplusage because the term surrounded by quotation marks never actually appears in the policy. Under settled principles of Oregon law, we are required to apply definitions contained in a policy of insurance as written and to avoid interpretations that render those definitions meaningless. *Andres v. American Standard Ins. Co.*, 205 Or App 419, 423, 134 P3d 1061 (2006).

■ There remains plaintiffs' alternative contention that, even if their claim is otherwise subject to an excluded cause of loss, they established an entitlement to coverage under the policy's additional coverage for "collapse." As we noted, the policy's additional coverage provisions apply in the event of a "collapse," which the policy very precisely defines to mean "an abrupt falling down or caving in of a building or

any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose" and that "separating from another part of the building," and as "cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion" are not considered to be a "collapse" within the meaning of the policy. In this case, there is a complete absence of evidence in the summary judgment record that the building "collapsed" within the meaning of the policy. Among other things, there is no evidence that the building or part of the building "abrupt[ly]" fell down or caved in or that the part of the building that was affected by the erosion of earth below the floor "cannot be occupied for its intended purpose." Aside from that, plaintiffs offered no evidence that the damage to their building was anything other than the "separating from another part of the building," "cracking, bulging, sagging, leaning, [and] settling" that the policy expressly defines *not* to constitute a "collapse."

Because we conclude that plaintiffs' loss was not a collapse and that the policy's "earth sinking" exclusion applies to preclude coverage, we conclude that the trial court did not err in granting defendant's motion for summary judgment.

Affirmed.