FOUNTAINCOURT HOMEOWNERS' ASSOCIATION
and FountainCourt Condominium Owners' Association,
*Plaintiffs,*

*v.*

FOUNTAINCOURT DEVELOPMENT, LLC;
et al,
*Defendants.*

FOUNTAINCOURT DEVELOPMENT, LLC;
et al,
*Third-Party Plaintiffs,*

*v.*

ADVANCED SURFACE INNOVATIONS, INC.,
an Oregon corporation; et al,
*Third-Party Defendants.*

VOSS FRAMING, INC.,
assignee for FountainCourt Homeowners' Association,
assignee for FountainCourt Condominium Owners' Association,
on behalf of FountainCourt Development, LLC,
on behalf of Matrix Development Corporation,
and on behalf of Legend Homes Corporation,
*Fourth-Party Plaintiff,*

*v.*

Dana CHRISTOPHER;
and Red Hills Construction, Inc.,
*Fourth-Party Defendants.*

FOUNTAINCOURT HOMEOWNERS' ASSOCIATION
and FountainCourt Condominium Owners' Association,
*Garnishors-Respondents,*

*v.*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
*Garnishee-Appellant.*

Washington County Circuit Court
C075333CV; A147420

334 P3d 973

Todd S. Baran argued the cause and filed the briefs for appellant.

Anthony L. Rafel argued the cause for respondents. With him on the brief were Rafel Law Group PLLC, and Robert L. O'Halloran, Katie Jo Johnson, and McEwen Gisvold LLP.

Michael E. Farnell, Sean W. Carney, and Parsons Farnell & Grein, LLP, filed the brief *amici curiae* for Associated General Contractors of America, Oregon-Columbia Chapter; Pacific Northwest Chapter of the Associated Builders and Contractors Inc.; Home Builders Association of Metropolitan Portland; Professional Remodelers Organization of the HBA

of Metro Portland; and Independent Electrical Contractors of Oregon, Inc.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

This appeal arises from a garnishment proceeding in which FountainCourt Homeowners' Association and FountainCourt Condominium Owners' Association (collectively, FountainCourt[1]) alleged that American Family Mutual Insurance Company (American Family) was legally obligated to pay the unsatisfied portion of a judgment that FountainCourt had recovered against Sideco, Inc. (Sideco), American Family's insured. The trial court agreed with FountainCourt, and American Family appeals the resulting supplemental judgment—which awarded FountainCourt $433,958.16 against American Family—and a subsequent supplemental judgment that awarded FountainCourt $68,538 in attorney fees. We conclude that the trial court did not err in entering a judgment against American Family for the unpaid amount of FountainCourt's judgment against Sideco, but that it did err in awarding FountainCourt its attorney fees. Accordingly, we affirm the supplemental judgment resolving the garnishment proceeding and reverse the attorney-fee award.

## I. BACKGROUND

The pertinent background facts are not in dispute. The case arises out of the construction of a housing development in Beaverton (the project), which consists of 34 condominium units and 63 townhouse units in 11 two- and three-story buildings. The buildings were constructed in stages between September 2002 and July 2004, with each having a different date of substantial completion as reflected in a certificate of occupancy. In 2007, FountainCourt brought this action against the developers and the general contractor, alleging various claims related to defects and deficiencies in the development and construction of the project. FountainCourt filed a second amended complaint in the action in August 2009, asserting direct negligence claims against several subcontractors that had performed work on the project, including Sideco.

---

[1] Although "FountainCourt" thus encompasses two entities—the homeowners' association and the condominium owners' association—for purposes of readability, we refer to it in the singular throughout this opinion.

As to Sideco, FountainCourt alleged that Sideco had "provided labor and certain materials generally involving installation of exterior siding, weather-resistant barriers, windows, and related caulking and flashing for the FountainCourt buildings," and had breached its duty of care to FountainCourt in performing its work "with the [d]efects and deficiences set forth in paragraphs 17-20" of the second amended complaint. Paragraphs 17 to 20, in turn, alleged "substantial water intrusion" to the FountainCourt buildings causing extensive physical damage as a result of faulty workmanship; use of unsuitable or defective materials; improper installation; noncompliance with the approved construction plans; and failure to comply with applicable building codes, industry standards, and manufacturers' installation requirements.

American Family issued commercial general-liability insurance to Sideco from May 1, 2004, through May 1, 2006, with policy limits of $1 million per occurrence and an aggregate of $2 million for products-completed operations. Section I 1. of the insurance policy, titled **"Insuring Agreement,"** provides, in part:[2]

"**a.** [American Family] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. * * *

"* * * * *

"**b.** This insurance applies to 'bodily injury' and 'property damage' only if:

"* * * * *

"**(2)** The 'bodily injury' or 'property damage' occurs during the policy period[.]"

Section I 2. of the policy, titled **"Exclusions,"** then provides that the insurance does *not* apply to, among other things:

---

[2] To aid in readability, our quotation of the relevant policy provisions retains the boldface formatting used in the original.

**"j. Damage to Property**

"'Property damage' to:

"* * * * *

"**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

"**(6)** That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

"* * * * *

"Paragraph **(6)** of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'

"* * * * *

**"l. Damage to Your Work**

"'Property Damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'."

In addition, an endorsement provides that the insurance "does not apply to * * * 'property damage' arising out of" "['y]our work' in connection with pre-construction, construction, post-construction of any 'multi-unit residential building'[.]"

The policy contains the following definitions, as pertinent:

"**13.** 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"* * * * *

"**16.** 'Products-completed operations hazard':

"**a.** Includes all * * * 'property damage' occurring away from premises you own or rent and arising out of * * * 'your work' except:

"**(1)** Products that are still in your physical possession; or

"**(2)** Work that has not yet been completed or abandoned. \* \* \*

" \* \* \* \* \*

"**17.** 'Property damage' means

"**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]

"\* \* \* \* \*

"**22.** 'Your work':

"**a.** Means:

"**(1)** Work or operations performed by you or on your behalf; and

"**(2)** Materials, parts or equipment furnished in connection with such work or operations."

Finally, the endorsement defines "'Multi-Unit Residential Building'" to mean "a condominium, townhouse, apartment or similar structure, each of which has greater than eight units built or used for the purpose of residential occupancy."

American Family accepted the defense of Sideco in the FountainCourt litigation, subject to a full reservation of rights. The cost of Sideco's defense was shared with Clarendon Insurance Company, which had issued an insurance policy to Sideco for the period April 15, 2003, to May 15, 2004.

FountainCourt's claim against Sideco proceeded to a jury trial on a single theory: negligence causing physical property damage. Specifically, FountainCourt asked the jury to award it $3,831,635 in damages, based on a repair estimate prepared by Charter Construction. The court instructed the jury, in part, as follows:

"Plaintiffs [that is, FountainCourt] must allege and prove physical damage to their property. \* \* \* The plaintiffs must prove damages by a preponderance of the evidence.

"If you find the plaintiffs are entitled to damages, you should—or shall determine the amount of physical damage

to plaintiffs' real property, if any, that was caused by the defendants' fault or negligence. The measure of damages for partial destruction of real property is the reasonable cost of repairing the damaged property."

The jury was not asked to segregate damages by type, building, or date.

The jury returned a verdict finding that Sideco was negligent "in one or more of the ways claimed" and that that negligence was a cause of damage to FountainCourt. It found that FountainCourt's damages were $2,145,156 and that Sideco was 22.65 percent at fault. Accordingly, on April 16, 2010, the trial court entered a judgment against Sideco in the amount of $485,877.84.

On April 28, 2010, FountainCourt mailed a writ of garnishment to American Family, as an insurer of Sideco, for the amount of the judgment that FountainCourt had recovered against Sideco—the "garnishable property" being the liability-insurance benefits that American Family allegedly owed to Sideco as a result of the judgment.[3] *See* ORS 18.352.[4] American Family's response indicated that it held no property belonging to Sideco and denied owing any debt to Sideco.

On July 27, 2010, FountainCourt moved for an order to show cause why judgment should not be entered against American Family on the writ of garnishment; it requested a hearing to determine whether American Family should

---

[3] FountainCourt also issued garnishment writs to two other insurers that had issued commercial general-liability policies to Sideco: Maryland Casualty Company (policy period April 15, 2002, through April 15, 2003), and Clarendon Insurance Company (policy period April 15, 2003, through May 15, 2004). FountainCourt's claims against Maryland Casualty were settled and subsequently dismissed. As noted below, the trial court found in favor of Clarendon in the garnishment proceeding.

[4] ORS 18.352 provides:

"Whenever a judgment debtor has a policy of insurance covering liability, or indemnity for any injury or damage to person or property, which injury or damage constituted the cause of action in which the judgment was rendered, the amount covered by the policy of insurance shall be subject to attachment upon the execution issued upon the judgment."

*See also State Farm Fire and Cas. v. Reuter*, 299 Or 155, 164, 700 P2d 236 (1985) (insurance policy may be subject to garnishment under *former* ORS 23.230 (1985), *renumbered as* ORS 18.352 (2003)).

be held liable under ORS 18.775 for the amount necessary to satisfy the garnishment, "along with an award of costs." American Family (and the other garnishees, see 264 Or App at 475 n 3) moved that the "matter be set on the normal trial docket." The trial court allowed FountainCourt's motion and set the case for a show-cause hearing pursuant to ORS 18.778 and ORS 18.782.[5]

FountainCourt then filed allegations pursuant to ORS 18.780, alleging that American Family was obligated under the terms of Sideco's policy to pay the judgment that FountainCourt had recovered against Sideco.[6] Specifically, it alleged, as relevant:

"The [American Family] Insurance Policies provide coverage for sums that [Sideco] becomes legally obligated to pay as damages because of property damage. [Sideco] became legally obligated under the General Judgment to pay damages to [FountainCourt] because of property damage. Property damage constituted the cause of action on which the General Judgment was entered against [Sideco] in this case."

---

[5] ORS 18.778(1) provides:

"If a garnishee fails to provide a garnishee response within the time required by law, or the response is unsatisfactory to the garnishor, or the garnishee fails to deliver garnishable property under the writ of garnishment within the time required by law, upon application of the garnishor, the garnishee may be ordered by the court to appear at a specified time and place for an examination. In addition to or in lieu of an order to appear for examination, the court may order the garnishee to appear for a hearing under ORS 18.782 to determine whether the garnishee should be held liable for the amount specified in ORS 18.775."

ORS 18.782 provides, in turn:

"Witnesses, including the debtor and garnishee, may be required to appear and testify at a hearing held pursuant to an order issued under ORS 18.778. The proceedings against a garnishee shall be tried by the court as upon the trial of an issue of law between a plaintiff and defendant."

[6] ORS 18.780 provides, in part:

"(1) If the court orders a garnishee to appear for a hearing under ORS 18.782, the garnishor must serve upon the garnishee written allegations not less than 20 days before the time set for the hearing or within such time as may be specified in the order. ***

"(2) Unless further time is allowed for good cause, not less than 10 days before the time when the garnishee is required to appear for hearing, the garnishee must file with the court an answer to the allegations and interrogatories of the garnishor and deliver a true copy of the answer to the garnishor. The answer shall be on oath and shall contain a full response to all of the allegations and interrogatories."

In the prayer-for-relief section of the document, FountainCourt requested judgment in an amount not less than $485,877.84 plus "costs and disbursements."

American Family answered and asserted several affirmative defenses, including that it was not obligated to pay the damages because some or all of them "did not arise from 'property damage'" or "result from an 'occurrence,'" and, to the extent that they did, some or all of them "resulted before or after the pertinent policy term" or were subject to one or more policy exclusions. It also asserted a counterclaim for declaratory relief, seeking a declaration that it was not obligated to pay the damages awarded in the judgment against Sideco or, alternatively, a declaration of the amount payable, and requesting its "costs and disbursements."

After limited discovery, the trial court held a hearing under ORS 18.782 on October 29 and November 2, 2010. It subsequently entered an order "find[ing]" that FountainCourt had "met [its] prima facie burden of proving coverage under the policies of insurance issued by American Family and Clarendon" and holding that "the burden of proof is on American Family and Clarendon to prove what portions, if any, of the judgments entered against Sideco, Inc. are excluded by the policies of insurance they issued to Sideco, Inc." Then, as to American Family, the court held:

> "The Court finds that American Family is unable to meet its burden of proving that any portion of the damages awarded against Sideco, Inc. for property damage caused to the FountainCourt buildings is not covered by the policies of insurance it issued to Sideco, Inc., by reason of any exclusion in said policies. Further, American Family is unable to show whether or how the jury apportioned damages among the FountainCourt buildings; accordingly its Multi-Unit Exclusion is inapplicable to this case and American Family is liable for the entire amount of the unsatisfied judgments entered against Sideco, Inc., which, as of October 29, 2010, totaled $433.958.16."[7]

---

[7] The court dismissed FountainCourt's claims against Clarendon and granted Clarendon's counterclaim for declaratory relief, explaining:

"The Court finds that the Multi-Unit Exclusion contained in the policies of insurance issued by Clarendon, coupled with the evidence before the Court as to the timing of construction of FountainCourt Building E, eliminates coverage under the Clarendon policies for the judgments entered against Sideco, Inc."

Based on that ruling, the court dismissed American Family's counterclaim for declaratory relief and directed FountainCourt to file a motion under ORCP 68 in support of its request for attorney fees and costs.[8] The court subsequently entered a supplemental judgment against American Family for $433,958.16, "together with such amount of [FountainCourt's] attorneys' fees, costs, and disbursements, as may be determined pursuant to ORCP 68."

Before the court entered the supplemental judgment, FountainCourt filed an ORCP 68 motion and petition for attorney fees and costs, asserting an entitlement to attorney fees under ORS 742.061.[9] It reasserted that motion, along with supporting records as to the amount of attorney fees and costs to be awarded, after the court entered the supplemental judgment. American Family opposed the motion, arguing that ORS 742.061 is inapplicable in a garnishment proceeding and, in all events, that FountainCourt had failed to allege an entitlement to attorney fees under that statute in its "dispositive motion"—the motion for an order to show cause.

After a hearing, the trial court issued a letter opinion concluding that FountainCourt was entitled to recover its attorney fees. The court reasoned that FountainCourt "could have believed [that it was] not required to separately plead both 'costs' and 'attorney fees' due to ORS 742.061," FountainCourt specifically mentioned attorney fees in "subsequent paperwork," and,

> "at no time did [American Family] object to the inclusion of attorney fees being the same as costs until after the trial had concluded. In fact, at the hearing [American Family]

---

[8] We note that dismissal of a claim for declaratory relief is not the proper disposition of it unless the claim is not justiciable, which is not the case here. *See, e.g., Doe v. Medford School Dist. 549C,* 232 Or App 38, 45, 221 P3d 787 (2009).

[9] ORS 742.061 provides, as relevant:

"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, *a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.*"

(Emphasis added.)

alluded to purposely waiting until after the trial to object apparently so [FountainCourt] could not move to amend its original motion. No party should benefit from waiting in the woods to ambush."

(Citation omitted.) The court gave FountainCourt leave to amend its show-cause motion to include a claim for attorney fees, which FountainCourt did on April 4, 2011. The court then entered a supplemental judgment awarding FountainCourt attorney fees in the amount of $68,538, along with costs and disbursements. American Family appeals both judgments. We consider each in turn.

## II.  ANALYSIS

### A.  *Garnishment Judgment*

In challenging the supplemental judgment in the garnishment proceeding, American Family asserts three assignments of error: (1) the court erred in "conclud[ing] that American Family held garnishable property of Sideco, and den[ying] American Family's request to be released from the Writ of Garnishment"; (2) the court's "finding" that FountainCourt had met its *prima facie* burden of proving coverage under the policy is not supported by evidence in the record; and (3) the court erred in denying American Family's request for a jury trial. American Family focuses primarily on the first of those assignments, as do we.

At a garnishment hearing, the issue is whether the garnishee holds garnishable property of the debtor. ORS 18.778(1); ORS 18.775. The garnishor, here FountainCourt, stands in the shoes of the judgment debtor, here Sideco. *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 164, 166, 700 P2d 236 (1985) ("A garnishment gives the judgment creditor plaintiff no greater rights against the garnishee than the judgment debtor defendant has.").

As noted earlier, under ORS 18.782, "[t]he proceedings against a garnishee [are] tried by the court as upon the trial of an issue of law between a plaintiff and defendant." Thus, the trial court in this case was required to determine whether American Family was obligated, by reason of its insurance policy with Sideco, to pay the damages that FountainCourt had recovered against Sideco. That, in

turn, required FountainCourt to prove that the judgment represented damages that came within the insuring agreement of the American Family policy (the *prima facie* case for coverage), at which point the burden shifted to American Family to prove, if it could, that an exclusion in the insurance policy applied. *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 349 Or 117, 127, 241 P3d 710 (2010), *adh'd to as modified on recons*, 349 Or 657, 249 P3d 111 (2011) (insured has the burden to prove coverage, while the insurer has the burden to prove an exclusion from coverage) (citing *Lewis v. Aetna Insurance Co.*, 264 Or 314, 316, 505 P2d 914 (1973), and *Stanford v. American Guaranty Life Ins. Co.*, 280 Or 525, 527, 571 P2d 909 (1977)); *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 509, 156 P3d 105, *rev den*, 343 Or 363 (2007) (same); *see also Bridal Veil L. Co. v. Pacific Coast C. Co.*, 75 Or 57, 61-62, 145 P 671 (1915) (*Bridal Veil*) ("Where a policy of insurance covers certain general risks, and in a separate clause of the policy excepts losses resulting from certain causes or under certain circumstances, the burden is on the insurer to allege and prove that the loss was one excepted from the general risk covered by the policy.").

We do not understand American Family to dispute that that is the applicable standard. Rather, American Family contends that FountainCourt failed *to satisfy* its burden of proving coverage in either of two ways: (1) it did not show that the judgment awarded compensation *only* for "property damage" as provided in the insuring agreement; or (2) it did not show that the judgment was for property damage that occurred solely during the American Family policy period—that is, while American Family was "on the risk."

1. *Property Damage*

American Family argues that (1) the jury was permitted to award the costs required to repair Sideco's own "faulty work"; (2) which is not "property damage" under the policy; (3) therefore, the verdict (and resulting judgment) *could* include compensation for damage that is not within the insuring agreement; and (4) consequently, FountainCourt failed to meet its *prima facie* burden in the garnishment

proceeding. It contends that *"physical* damage," for which the jury was instructed that it could award compensation, does not equate with *"property* damage," as used in the insuring agreement. (Emphases added.) In American Family's view, that discrepancy—together with the fact that FountainCourt included in its repair estimate the cost of repairing the water damage caused by Sideco's negligence, *as well as* the cost of repairing Sideco's own faulty work— allowed the jury to award compensation for damages that did not involve "property damage" under the policy. Said another way, it is American Family's position that the verdict *could* have included the cost to repair Sideco's faulty work, rather than only the cost to repair the resulting property damage, which is not "damages because of * * * 'property damage,'" as used in the insuring agreement. Thus, FountainCourt did not satisfy its *prima facie* burden of proving coverage. American Family summarizes its argument as follows:

> "In this case, [FountainCourt] asked the jury to award some damages that were within Sideco's insuring agreement, and some that were not. Because the jury returned a verdict for less than the prayer, the verdict *could* include damages that were not within Sideco's insuring agreement. Under such circumstances, it is error to conclude, as a matter of law, that the verdict only includes damages that are within the insuring agreement. Consequently, the trial court erroneously concluded that [FountainCourt] established a prima facie case for coverage."

(Emphasis added; footnote omitted.)

FountainCourt responds that American Family "had the burden of proving what portion, if any, of the damages awarded by the jury were for damage to Sideco's own work, as opposed to damage to the work of others," because "damage to work of the insured is a policy exclusion." In its view, it satisfied its *prima facie* burden of proving that the judgment was for "property damage" under the insuring agreement because it demonstrated that the jury was instructed that it could award compensation *only* for physical property damage. And FountainCourt's expert established that physical damage due to Sideco's defective work occurred in every

one of the buildings during each of the policy periods, thus triggering coverage. Moreoever, FountainCourt points out, the evidence at the garnishment hearing establishes that there was sufficient consequential damage to components other than Sideco's own work to constitute the entirety of the damages awarded against Sideco. Thus, the trial court correctly determined that FountainCourt had met its *prima facie* burden of proving coverage under the policy. We agree with FountainCourt.

The interpretation of an insurance contract presents a legal question; the objective is to ascertain the intention of the parties "based on the terms and conditions of the insurance policy." *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-71, 836 P2d 703 (1992) (setting forth analytical framework for interpreting insurance policies). We interpret insurance policies to give effect to every provision. *Cain Petroleum Inc. v. Zurich American Ins. Co.*, 224 Or App 235, 242, 197 P3d 596 (2008), *rev den*, 346 Or 115 (2009) ("[I]f a proposed interpretation would require us to disregard any provision of the policy, it is not reasonable, as a matter of law.").

The Supreme Court's recent decision in *ZRZ Realty* is instructive. There, the court considered whether

"the requirement [for coverage under the applicable insurance policies] that any damage to the environment be neither intended nor expected is part of a limited grant of coverage[—that is, coverage only for unexpected and unintended losses—]to which the insured would have to prove entitlement or an exclusion from a broad grant of coverage for which the insurer would have to prove justification."

349 Or at 127. The court held that the way the parties chose to structure their insurance agreements was significant.

Thus, with respect to the express-fortuity policies that were among the policies at issue in *ZRZ Realty*, because the parties had chosen to provide coverage only for unexpected and unintended damages, and did *not* list expected or intended damages as an exclusion, "the burden [was] on the *insured* to prove that the event that triggered the loss came within the scope of that coverage." *Id.* at 129 (emphasis

added). In contrast, the implied-fortuity policies at issue in the case contained a "broad grant of coverage without any requirement that the damages be unexpected and unintended," *id.* at 132—covering, for example, "'[a]ny and all liability imposed by law,'" *id.* at 133 (alteration in *ZRZ Realty*). Nonetheless, the trial court had read into that broad coverage a "public policy" limitation that the damages giving rise to the insured's liability "be neither expected nor intended," which it was the insured's burden to prove. *Id.* The Supreme Court disagreed, concluding that such a limitation is properly understood as "an exclusion from a broad grant of coverage rather than as a grant of limited coverage," *id.* at 134; thus, with respect to the implied-fortuity policies, the court concluded that the *insurer* bore the burden of proving that the damages were expected or intended. *Id.* at 138.

As the Supreme Court explained, although both types of policies insured against the same risk,

"[w]e must classify the limitation one way or another, and we conclude that respecting the parties' choice is the more appropriate method. Not only does it permit the parties to structure their agreements in a way that allocates the burden of proof, but it also avoids putting courts in the difficult position of divining the 'essence' of contractual provisions that logically may serve either as a grant of limited coverage or an exclusion from a broad grant of coverage."

*Id.* at 132.

Here, the insuring agreement provides that American Family "will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'property damage' to which this insurance applies." "'Property damage'" is defined to mean "[p]hysical injury to tangible property." The policy then provides a list of exclusions, including an explicit exclusion for "'[p]roperty [d]amage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" Thus, the parties chose to structure their agreement as a broad grant of coverage, subject to a list of exclusions, including an exclusion for "Damage to Your Work." Giving effect to every provision in the policy, *Cain Petroleum Inc.*, 224 Or App at 242, we reject the idea that the "your work" distinction is, as American

Family urges, one inherent in the definition of "property damage," rather than an exclusion under the policy.[10]

We also agree with FountainCourt that it met its burden to prove that the judgment reflected "damages because of *** 'property damage,'" as used in the insuring agreement. The case went to the jury on the sole theory of negligence causing *physical property damage. See Harris v. Suniga*, 344 Or 301, 180 P3d 12 (2008) (nonprivity property owners' claim for physical damage to real property could provide the basis for a negligence action, rather than a purely economic loss for which recovery is not permitted in the absence of a special relationship).[11] As detailed above, FountainCourt's complaint alleged extensive physical injury to tangible property throughout the project. The trial court instructed the jury that FountainCourt "must allege and prove *physical damage to [its] property*," and that,

> "[i]f you find [that FountainCourt is] entitled to damages, you *** shall determine *the amount of physical damage to [FountainCourt's] real property, if any, that was caused by the defendants' fault or negligence.* The measure of damages for partial destruction of real property is the reasonable cost of repairing the damaged property."

(Emphasis added.) FountainCourt's counsel explained to the jury, in part, "We know there's damaged property, and you have to determine what is the reasonable cost. *** What does the damaged property consist of? It consists of these components that were damaged by water intrusion."

Jeff Forell, FountainCourt's expert who had inspected the buildings, testified at the garnishment hearing that

---

[10] We are not persuaded that the cases cited by American Family—*Wyoming Sawmills v. Transportation Ins. Co.*, 282 Or 401, 578 P2d 1253 (1978), and *Milgard Manufacturing v. Continental Insurance*, 92 Or App 609, 612, 759 P2d 1111 (1988)—point in a different direction. The issues before the courts in those cases are not analogous, and, as discussed, the Supreme Court has recently clarified that the allocation of the burden of proof is governed by the way in which the parties have chosen to structure their agreements.

[11] Under the economic-loss doctrine, "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property"; rather, "[s]ome source of duty outside the common law of negligence is required." *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987) (citations omitted). Thus, physical damage to real property was the only viable theory of negligence available to FountainCourt.

there was physical damage, due to Sideco's defective work, to underlying materials in all of the FountainCourt buildings. He explained that he had provided to the jury an allocation, by subcontractor, of the total repair estimate; that Sideco's allocation was approximately $1.5 million; and that all of the $485,000 awarded by the jury could have been to repair that resulting damage:

> "Q.  *** Could all have [sic] the $485,000 that was awarded by the jury against Sideco have been awarded for consequential damage, resulting damage, as opposed to damage to Sideco's own work?

> "A.  Yes, it could have.

> "Q.  All right. I mean, given the $1.5 million allocation to Sideco, do you agree that the jury could have found, based on the evidence that you presented, that there was $485,000 worth of damage to other components caused by Sideco's work.

> "A.  Yes."

Given those circumstances, we conclude that the trial court did not err in concluding that FountainCourt—standing in the shoes of Sideco—had satisfied its *prima facie* burden to prove that the judgment against Sideco reflects "sums that [Sideco] bec[a]me[] legally obligated to pay as damages because of *** 'property damage'" to which the insurance applied. The burden then shifted to American Family to prove that any portion of the damages awarded by the jury was not covered by the policy *by reason of any exclusion. ZRZ Realty*, 349 Or at 127. The trial court concluded that American Family had failed to meet that burden, and American Family does not contend otherwise on appeal.

### 2.  *Timing of Damage*

In a similar vein, American Family argues that, even assuming that the damages awarded by the jury were all for covered property damage, "[b]ecause [FountainCourt] failed to establish that all of the Sideco damages were awarded for 'property damage' that occurred while American Family was on the risk, FountainCourt should take nothing." American Family concedes that "[s]ome consequential water damage may have occurred while American Family was on the risk."

However, it contends that, because the insuring agreement, by its terms, applies only to property damage that occurs "during the policy period"—a provision that, in its view, "operates as both a trigger of, and limitation on, coverage"—FountainCourt was required to establish which portion of the damages awarded by the jury occurred during the discrete period of time that American Family was on the risk. According to American Family, because some water damage for which the jury awarded damages necessarily occurred either before or after the American Family policy term, FountainCourt failed to meet its *prima facie* burden of proving coverage under the American Family policy, and the trial court erred in concluding otherwise.

We disagree. As discussed above, the insuring agreement requires American Family to pay, on Sideco's behalf, all sums that Sideco is legally obligated to pay as damages because of property damage "to which this insurance applies." It then provides that the insurance "applies" to property damage "only if" the property damage "occurs during the policy period." Thus, FountainCourt had the *prima facie* burden to prove that the judgment awarding damages against Sideco reflected amounts that Sideco was legally obligated to pay as damages because of property damage that occurred during American Family's policy period. We conclude that the trial court did not err in concluding that FountainCourt had satisfied that burden.

FountainCourt proceeded against Sideco on the theory that Sideco's work was defective and that those defects were contributing to the infiltration of rain water and consequential water damage to building components. The jury agreed with FountainCourt and found that Sideco's portion of responsibility for the damage was $485,877.84. FountainCourt could not have prevailed on its claim without proving that Sideco negligently caused damage to FountainCourt's property. Thus, as a result of the jury's verdict, Sideco became legally obligated to pay damages because of property damage. At the garnishment hearing, Forell testified that the damage to the buildings from the water intrusion occurred after the construction on each building was completed and that the damage would continue to occur, or progress, until it was repaired. He also testified that every

building in the project sustained water damage because of defects in Sideco's work while the American Family policies were in effect.

Thus, given the progressive and continuing nature of the harm alleged by FountainCourt and found by the jury—water intrusion causing property damage—the award of damages reflected in the judgment against Sideco could represent an award of damages for property damage—that is, "[p]hysical injury to tangible property"—that occurred *entirely* during the American Family policy period. Stated in the converse, because of the harm alleged—ongoing and progressive property damage caused by water intrusion resulting from Sideco's negligence—and the case that was presented to the jury, there is nothing in the record that would *require* a conclusion that *any* portion of the damages awarded by the jury represents damages for repairing property damage that occurred *outside* of American Family's policy period. In other words, FountainCourt has established that the judgment was "based upon evidence which identified it as one within the coverage of the insurer's obligation," *Jarvis et ux v. Indemnity Ins. Co.*, 227 Or 508, 512, 363 P2d 740 (1961), thus satisfying its *prima facie* burden.

American Family nonetheless reasons that, because the trial court also concluded that FountainCourt had met its *prima facie* burden of proving coverage under the policies issued by Clarendon—which had expired before the American Family policy became effective—the judgment against Sideco *necessarily* included damage for property damage that occurred during Clarendon's policy term and, consequently, not while American Family was on the risk. In its view, "the trial court's conclusion that American Family owed coverage for the entire judgment against Sideco was legally inconsistent with its conclusion that damages were within Clarendon's insuring agreement."

Again, we are not persuaded. In the case of continuing and progressive water damage, the award of damages is not tied to discrete instances of property damage along a time continuum; instead the liability for property damage may be the same in every triggered policy period. That is so because the scope of repair—to replace the damaged

structural components and eliminate the water intrusion—does not necessarily change depending on the year in which the damage occurred. Accordingly, given the nature of the injury, it is possible that both Clarendon and American Family could be liable for the same damage.

In short, we reject American Family's theory that, in order to establish a *prima facie* case for coverage in the context of ongoing and progressive property damage, FountainCourt was required to exclude *the possibility* that the jury's verdict includes damages for repairing property damage that occurred outside the American Family policy period. Rather, once FountainCourt established that the judgment reflects damages for property damage that occurred during American Family's policy period, and that all of the damages awarded could have been for property damage sustained during that policy period, FountainCourt satisfied its burden of proving coverage under the insuring agreement, and it fell to American Family to establish that some portion of the damages included in the judgment did *not* reflect property damage occurring during its policy period.[12]

3. *Issue Preclusion*

American Family also contends that, even if it could be said that the jury had determined that the entire loss involved property damage to which the insurance applied, those findings are not preclusive in the garnishment action. Citing *State Farm Fire and Casualty Co. v. Paget*, 123 Or App 558, 860 P2d 864 (1993), *rev den*, 319 Or 36 (1994), American Family argues that its reservation of its right to contest whether the claims against Sideco involved property

---

[12] FountainCourt and *amici* (Associated General Contractors of America, Oregon-Columbia Chapter; Pacific Northwest Chapter of the Associated Builders and Contractors Inc.; Home Builders Association of Metropolitan Portland; Professional Remodelers Organization of the HBA of Metro Portland; and Independent Electrical Contractors of Oregon, Inc.) argue that, under *St. Paul Fire v. McCormick & Baxter Creosoting*, 324 Or 184, 923 P2d 1200 (1996), and *Cascade Corp. v. American Home Assurance Co.*, 206 Or App 1, 135 P3d 450 (2006), *rev dismissed*, 342 Or 645 (2007), Oregon has essentially adopted an "all sums" approach, by which, simply stated, once a policy is triggered under the insuring agreement, "any one insurer whose policy is thus triggered has a duty *** to make its insured whole, absent an applicable exclusion, up to available policy limits." In light of our analysis and disposition, we need not reach that question.

damage that was covered by the insurance policy created a conflict between it and Sideco that precludes Sideco, or its judgment creditor, FountainCourt, from relying on issue preclusion to prove, in the garnishment proceeding, that the entire judgment was within the insuring agreement. On the other hand, relying on *Jarvis*, 227 Or 508, FountainCourt and *amici* argue that American Family *is* bound by the jury determination as to "property damage."

We disagree that this case presents a question of issue preclusion. The doctrine of issue preclusion "arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993); *see also Restatement (Second) of Judgments* § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties[.]").

Here, under the terms of its policy, American Family was obligated to pay those sums that Sideco became legally obligated to pay as damages because of property damage to which the policy applied. Sideco, in incurring the judgment against it, became "legally obligated to pay as damages" the amount reflected in the judgment. Hence, the question is whether that judgment can be understood as embodying a determination of liability to which the policy applies. In other words, the question is *not* whether American Family is *legally bound* by a prior determination but, rather, whether it is bound *by its contract* to pay the amount reflected in the judgment. In that light, the dispositive question is this: What is the effect of the judgment under the insurance contract in light of the basis on which the case against Sideco was tried? That is a purely legal question; it is *not* a question of what *facts* were actually litigated below and whether *those facts* should be given preclusive effect in the garnishment proceeding.[13]

---

[13] To reiterate, the issue in the garnishment proceeding was *not* whether there was a factual basis for FountainCourt *to obtain a judgment against* Sideco for which American Family *would be liable* under its insurance policy and, hence, whether the judgment that FountainCourt had obtained against Sideco *should*

Here, the trial court did not rely on issue preclusion to conclude that "the entire judgment was within Sideco's insuring agreement"; rather, it concluded, correctly, that the judgment represented a determination of liability of the type that is subject to American Family's insurance obligation as a contractual—not a factual—matter. As discussed above, that conclusion was correct given—as demonstrated at the garnishment hearing—the manner in which the case was presented to the jury, including the pleadings, the proof, and the instructions to the jury. In short, the court did not err in determining that FountainCourt had established a *prima facie* case that the damages awarded in the judgment included "damages because of * * * property damage" that came within the American Family insuring agreement, and that American Family had failed to establish that the judgment included damages that American Family was *not* legally obligated to pay. American Family's attempt to argue, instead, that the trial court had relied on the judgment as *preclusive* of the issue is simply inapposite.[14]

That reasoning also disposes of American Family's second and third assignments of error. In its second assignment, American Family contends that the trial court's "factual determination" that all of the damages awarded against Sideco were within its insuring agreement is not supported by the evidence in the record. As just discussed, we reject the premise that the court made such a factual determination. *See Clark and Clark*, 171 Or App 205, 210, 14 P3d 667 (2000) ("The determination of whether the essential elements of a claim have been established—in other words, whether a *prima facie* case was made—is a question of law.").

---

*be given* preclusive effect in the garnishment proceeding with regard to those facts. Rather, the issue in the garnishment proceeding was whether there *is* a judgment against Sideco that American Family *is* required to pay under its insurance policy. In resolving the latter issue, the trial court considered the facts of the underlying case and trial to determine whether *the judgment* embodied a payment obligation that came within the insuring agreement. However, in doing that, the court was *not* required to resolve *any* of the facts that were at issue in the underlying case. It was required, instead, to determine how, in light of the trial in the underlying case, those factual issues had been resolved through entry of *the judgment*.

[14] To be clear: Our point is not that FountainCourt's claim for garnishment is not part of the same "proceeding" as the earlier litigation (we express no opinion on that point); it is that the issues are not the same.

In its third assignment of error, American Family challenges the trial court's denial of its request for a jury trial. It argues that there was a factual dispute as to what the jury had concluded regarding the timing of consequential water damage to the FountainCourt property—specifically, it contends that "there was evidence presented during the garnishment proceeding that would have permitted a jury to find that consequential water damage did not occur while American Family was on the risk." And, it continues, "[b]ecause a garnishment proceeding against an insurer seeks to adjudicate contractual rights and obligations," American Family was entitled, under Article I, section 17, of the Oregon Constitution, to a jury trial on any disputed issues of fact. As just discussed, however, the question before the trial court in the garnishment proceeding was not—as a matter of *fact*—whether Sideco had been found liable on a basis for which it has insurance coverage, and in what amount, but, rather, whether the judgment reflects a determination of applicable liability—that is, because the entry of the judgment triggered American Family's obligation to pay a covered debt, the court was called upon to determine the import of that judgment under the parties' contract as a *legal* matter.

For all of those reasons, the trial court did not err in concluding that FountainCourt was entitled to a supplemental judgment of garnishment against American Family.

B.   *Judgment for Attorney Fees*

In its fourth assignment of error, American Family challenges the supplemental judgment awarding attorney fees to FountainCourt, arguing that FountainCourt was not entitled to a fee award because the statute on which the award is based, ORS 742.061,[15] does not apply in a garnishment proceeding, and, even if it does apply, FountainCourt did not properly plead an entitlement to attorney fees as required by ORCP 68 C(2). Reviewing for legal error, *Rymer v. Zwingli*, 240 Or App 687, 691, 247 P3d 1246, *rev den*, 350 Or 716 (2011), we agree with American Family's second contention; accordingly, we need not determine whether ORS 742.061 applies in this context. In other words, we conclude

---

[15] The pertinent text of ORS 742.061 is set out at 264 Or App at 478 n 9.

that, even if ORS 742.061 authorizes an award of attorney fees in a garnishment proceeding—a question that we expressly do not decide—FountainCourt was not entitled to an award of fees because it failed to comply with the strictures of ORCP 68 C(2).

ORCP 68 provides, as relevant:

"C(2)(a) **Alleging right to attorney fees.** A party seeking attorney fees shall allege the facts, statute, or rule that provides a basis for the award of such fees in a pleading filed by that party. Attorney fees may be sought before the substantive right to recover such fees accrues. No attorney fees shall be awarded unless a right to recover such fee is alleged as provided in this subsection or in paragraph C(2)(b) of this rule.

"C(2)(b) If a party does not file a pleading but instead files a motion or a response to a motion, a right to attorney fees shall be alleged in such motion or response, in similar form to the allegations required in a pleading."

(Boldface in original.) The rule thus provides that "attorney fees shall not be awarded unless a party alleges the right to those fees in a pleading or motion and identifies a basis for that entitlement." *Anderson v. Dry Cleaning To-Your-Door*, 249 Or App 104, 108, 275 P3d 181 (2012).

Here, the parties agree that the dispositive motion for purposes of ORCP 68 C(2)(b) was FountainCourt's motion for an order to show cause why judgment should not be entered against American Family, which FountainCourt filed on July 27, 2010.[16] In that motion, FountainCourt requested only "an award of costs"; it did not allege a right to recover attorney fees under ORS 742.061, as required under ORCP 68 C(2)(b).

Nonetheless, FountainCourt asserts that its inclusion of a request for "costs" in the show-cause motion satisfied the requirement that it allege an entitlement to attorney

---

[16] We accept that agreement but note that, under ORS 18.780, FountainCourt filed allegations and American Family filed an answer that framed the issues to be tried in the garnishment proceeding. The parties do not address, and we do not consider, the relationship between those allegations and the pleading requirement in ORCP 68 C(2). As it is, the cost allegations in the garnishment proceeding and the original show-cause motion are the same.

fees because ORS 742.061(1) provides that "attorney fees, if available under that statute, 'shall be taxed *as part of the costs* of the action.'" (Emphasis by FountainCourt.) FountainCourt also asserts that its failure to comply with ORCP 68 C(2) should be excused because "American Family also knew from FountainCourt's Pre-Hearing Memorandum that FountainCourt was requesting attorney fees pursuant to ORS 742.061." We disagree with both propositions.

First, FountainCourt did not mention ORS 742.061 in its motion; thus, even if it could be sufficient to consider a request for attorney fees to be encompassed in the request for an award of costs because of the particular treatment of the subject in the authorizing statute—a dubious proposition—without some reference to *that statute*, nothing in the motion would have given American Family notice that FountainCourt intended to recover attorney fees under the statute. An allegation of an entitlement to an award of costs, without more, is *not* an allegation of an entitlement to an award of attorney fees. *See Lumbermen's v. Dakota Ventures*, 157 Or App 370, 375, 971 P2d 430 (1998) (purpose of ORCP 68 C(2) is to ensure that opponents are given adequate notice of a party's intention to seek attorney fees); *see also* ORCP 68 (addressing allowance of costs and disbursements separately from requirement to allege right to attorney fees).

Furthermore, the Supreme Court has made clear that ORCP 68 C(2)'s requirement to allege the right to attorney fees in the motion (or pleading) is mandatory. *Mulier v. Johnson*, 332 Or 344, 350, 29 P3d 1104 (2001). In *Mulier*, the Supreme Court reversed our decision, in which we had held that the defendant's failure to allege its right to attorney fees in its motion for summary judgment, as required by ORCP 68 C(2)(b), was "immaterial" because the defendant did assert such an entitlement in its concurrently filed memorandum in support of summary judgment, and plaintiff was therefore not prejudiced. *Id.* at 348 (describing our opinion in *Mulier v. Johnson*, 163 Or App 42, 47, 986 P2d 742 (1999)). The court held that a memorandum is not a motion and, consequently, that the defendant's request for attorney fees did not satisfy the rule. *Id.* at 351; *cf. Anderson*, 249 Or App at 109 (relying on *Mulier* to reject the plaintiff's attempt to assert an entitlement to attorney fees for the first time

in a proposed form of judgment). Hence, FountainCourt's reference in its prehearing memorandum to its request to recover attorney fees cannot overcome its failure to allege in its show-cause motion a right to recover attorney fees.

FountainCourt next argues that the trial court correctly allowed it to amend its show-cause motion to allege a right to recover attorney fees after the court had entered a judgment on the merits in the garnishment proceeding. To recap the timing of the relevant events: (1) FountainCourt filed its motion to show cause why judgment should not be entered against American Family in the garnishment proceeding—which did *not* include a request for attorney fees under ORS 742.061—on July 27, 2010. (2) On December 20, 2010, the court entered a supplemental judgment on the merits in the proceeding. (3) On March 1, 2011, the court gave FountainCourt leave to amend its original show-cause motion to allege a right to recover attorney fees. (4) On April 4, 2011, FountainCourt filed an amended show-cause motion requesting attorney fees under ORS 742.061. (5) On the same date, April 4, 2011, the trial court entered a supplemental judgment awarding FountainCourt its attorney fees.

FountainCourt contends that the trial court's order allowing it to amend its show-cause motion after the entry of the supplemental judgment in the garnishment proceeding was proper under ORCP 23 B, and, therefore, any defect in not adequately alleging an entitlement to fees was "cured" by its filing of the amended motion. We disagree. ORCP 23 B allows post-judgment amendment of the pleadings "as may be necessary to cause them to conform to the evidence" and, hence, to raise "issues not raised by the pleadings [but] tried by express or implied consent of the parties." It does not, on its face, allow the amendment of a pleading *to create* an issue to be tried *after* the entry of the applicable judgment. *Cf. Benj. Franklin Fed. Savings and Loan v. Phillips*, 88 Or App 354, 357, 745 P2d 437 (1987) (allowing amendment of pleading under ORCP 23 A to assert entitlement to attorney fees under ORCP 68 C where the amendment is allowed before entry of final judgment). Nor does ORCP 23 B say anything about amending a *motion*. *See* ORCP 13 A ("The pleadings are the written statements by the parties of the

facts constituting their respective claims and defenses.");
ORCP 13 B (identifying kinds of pleadings allowed under
the rules); ORCP 68 C(2)(b) (party that does not file a plead-
ing is required to allege right to attorney fees in motion or
response "in similar form to the allegations required in a
pleading").

Accordingly, we conclude that the trial court erred
in awarding attorney fees to FountainCourt.

### III. CONCLUSION

In summary, we conclude that the trial court did
not err in entering a judgment against American Family
for the unpaid amount of FountainCourt's judgment against
Sideco, but that it did err in awarding attorney fees to
FountainCourt.

Supplemental judgment for garnishment against
American Family Mutual Insurance Company affirmed.
Supplemental judgment against American Family Mutual
Insurance Company for attorney fees, costs, and disburse-
ments reversed as to award of attorney fees; otherwise
affirmed.