Argued and submitted November 30, 2021; affirmed on appeal, reversed and remanded on cross-appeal January 5; on respondents-cross-appellants' petition for reconsideration filed January 18 and appellants-cross-respondents' response to petition for reconsideration filed January 25, reconsideration allowed by opinion February 24, 2022
See 317 Or App 815, 505 P3d 516 (2022)

Weston TWIGG
and Carrie Twigg,
*Plaintiffs-Respondents
Cross-Appellants,*
*and*

RAINIER PACIFIC
DEVELOPMENT, LLC (RPD),
an Oregon limited liability company,
*Defendant,*

*v.*

Gregg OPSAHL,
Hana Opsahl, and Erik Opsahl,
*Garnishees-Appellants
Cross-Respondents.*

Multnomah County Circuit Court
18CV58804; A174051

505 P3d 486

Garnishees (the Opsahls) appeal a supplemental judgment awarding $106,000 to plaintiffs (the Twiggs) to satisfy a portion of the money owed to plaintiffs by judgment debtor Rainier Pacific Development, LLC (RPD), of which the Opsahls were the managing members. The trial court awarded garnishment in the amount of unlawful distributions made by RPD to Erik Opsahl but denied garnishment of allegedly fraudulent transfers made by RPD to Gregg and Hana Opsahl. The Twiggs cross-appeal that denial, contending that a transferee's liability for fraudulent transfers is garnishable. The Opsahls contend that previously unlitigated liabilities are not garnishable. *Held*: A member's liability to an LLC for unlawful distributions and a transferee's liability for fraudulent transfers are garnishable, and both liabilities may be determined within a garnishment proceeding.

Affirmed on appeal; reversed and remanded on cross-appeal.

Leslie M. Roberts, Judge.

J. Kurt Kraemer argued the cause for appellants-cross-respondents. Also on the briefs was McEwen Gisvold LLP.

Steven F. Cade argued the cause for respondents-cross-appellants. Also on the briefs were Charles R. Markley and Williams Kastner.

Before Kamins, Presiding Judge, and Lagesen, Chief Judge, and Landau, Senior Judge.

KAMINS, P. J.

Affirmed on appeal; reversed and remanded on cross-appeal.

## KAMINS, P. J.

Garnishees (the Opsahls) appeal a supplemental judgment awarding $106,000 to plaintiffs (the Twiggs) to satisfy a portion of the money owed to plaintiffs. The Twiggs cross-appeal, assigning error to the trial court's denial of their claim for garnishment based on a fraudulent transfer theory. We affirm on the appeal and reverse and remand on the cross-appeal.

## I.   FACTUAL BACKGROUND

Rainier Pacific Development, LLC (RPD) was a general contracting company owned and managed by a married couple, Hana and Gregg Opsahl, and their son, Erik Opsahl. On October 20, 2018, an arbitrator ordered RPD to pay $604,594.80 to plaintiffs, Carrie and Weston Twigg, in a dispute that arose out of RPD's construction of the Twiggs' home in 2013. RPD dissolved shortly after the judgment issued with no remaining assets to fulfill its obligation to the Twiggs. The Twiggs, in search of assets to satisfy the judgment, served writs of garnishment on each of the Opsahls on August 8, 2019. Hana's and Gregg's responses indicated that the only property they held belonging to RPD was some office equipment and leftover construction material, and Erik responded that he did not hold any of RPD's property. The Twiggs disputed the responses, alleging them to be deficient for failing to identify assets owed to RPD. Specifically, the response failed to identify assets that had been unlawfully distributed or fraudulently transferred to the Opsahls while RPD was in operation. The Twiggs contended that the Opsahls intentionally kept RPD in a judgment-proof state by periodically scraping out all of its cash assets, thereby depriving RPD's creditors of recovery. They asserted that the Opsahls owed obligations to RPD for unlawful distributions and fraudulent transfers at the time of garnishment and that those obligations constituted garnishable property.

The unlawful distribution claim is predicated on ORS 63.229(1), which prohibits LLCs from making distributions to members if the LLC is insolvent, and ORS

63.235(1), which imposes personal liability on members who receive or approve unlawful distributions. The trial court found that RPD had been consistently insolvent at all relevant times and yet made a distribution of $106,000 to Erik Opsahl during the two-year statute of limitations imposed by ORS 63.235(4). It thus awarded garnishment of that amount.

The Twiggs' fraudulent transfer claim is based on the Uniform Fraudulent Transfer Act (UFTA), ORS 95.200 to 95.310. The Twiggs presented evidence that RPD's lease of a building owned by the Opsahls was essentially a sham, such that the rent payments were fraudulent transfers as defined by the UFTA. The trial court did not determine whether the rent arrangement was fraudulent because it concluded that it could not grant a remedy under the UFTA in a garnishment proceeding where the money had since been spent.

The Opsahls appeal, assigning error to the trial court's award of $106,000 to recover for the unlawful distribution, and the Twiggs cross-appeal the denial of their fraudulent transfer claim. On the appeal, we affirm the trial court's award of $106,000 due to the unlawful distribution. On the cross-appeal, we reverse the trial court's determination that it could not grant the Twiggs' requested remedy under the UFTA, and remand for further proceedings on whether the rent payments were fraudulent.

## II.   ANALYSIS

We review statutory garnishment proceedings for legal error. *Jones v. Bhattacharyya*, 305 Or App 503, 506, 471 P3d 135, *adh'd to as modified on recons*, 307 Or App 200, 474 P3d 464 (2020). We are bound by the trial court's factual findings if they are supported by any evidence in the record. *Wilson v. Gutierrez*, 261 Or App 410, 411, 323 P3d 974 (2014).

This case requires us to examine the interplay between Oregon's garnishment statutes and statutes defining business torts. As relevant here, ORS 18.775 provides that a court may find a garnishee liable for an amount equal to the value of unreported "garnishable property" held by

the garnishee at the time of garnishment.[1] "Garnishable property" is defined as

> "all personal property of the debtor, including but not lim-ited to property in safe deposit boxes, stocks, wages, *mone-tary obligations owing to the debtor that are then in existence* whether due or to become due, property held on expired and unexpired bailments and leases, and property held by the garnishee pursuant to a security interest granted by the debtor to the garnishee."

ORS 18.615 (emphasis added). The issue on appeal with regard to the unlawful distribution claim is whether a member's liability to an LLC for unlawful distributions constitutes a "monetary obligation[] owing to the debtor," such that a court may order garnishment in the amount of that liability. *Id*. On the cross-appeal, the issue is whether a transferee's liability for fraudulent transfers is similarly gar-nishable. We conclude that both liabilities are garnishable.

A.  *Liability for Unlawful Distributions*

The Opsahls advance several arguments for why a member's liability to an LLC for unlawful distributions is not "garnishable property." They first assert that the obligation was not "then in existence" for purposes of ORS 18.615 when the writs of garnishment were served, because it had not yet been adjudicated or liquidated. However, our

---

[1] ORS 18.775(1) and (2) provide:

"(1) If a garnishee fails to file a garnishee response within the time required by law, or fails to deliver all garnishable property required to be delivered under the writ of garnishment within the time required by law, the garnishee is liable to the creditor in an amount equal to the lesser of:

"(a) The amount required to satisfy the garnishment; or

"(b) The value of the debtor's garnishable property held by the garnishee at the time the writ is delivered to the garnishee.

"(2) A judgment may be entered against the garnishee for the amounts specified in this section if, after a hearing, the court finds that:

"(a) The garnishee at the time of the delivery of the writ of garnishment held garnishable property of the debtor beyond the amount reported in the garnishee response;

"(b) The garnishee held any garnishable property of the debtor and the garnishee failed to make a response; or

"(c) The garnishee failed to deliver garnishable property required to be delivered under the writ."

precedent has long recognized that plaintiffs may assert previously unlitigated claims within a garnishment proceeding. *See, e.g.*, *FountainCourt Homeowners v. FountainCourt Develop.*, 360 Or 341, 358-59, 380 P3d 916 (2016) (affirming determination of insurer's liability to insured in a garnishment proceeding); *Castleman v. Stryker et al.*, 109 Or 207, 228-29, 219 P 1084 (1923) (holding that a transfer violated the Bulk Sales Act and was garnishable). The trial court correctly concluded that a garnishees' liability to the debtor for unlawful distributions is properly considered in a garnishment proceeding.

The Opsahls next contend that the trial court erred in determining that the unlawful distribution statutes can create a garnishable obligation. ORS 63.235(1) provides that a member "who votes for or assents to a distribution made in violation of ORS 63.229, \*\*\* is personally liable to the limited liability company for the amount of the distribution that exceeds the amount that could have been distributed without violating ORS 63.229." ORS 63.229(1), in turn, prohibits LLCs from making distributions to members if the distribution would leave the LLC insolvent. As the trial court found, RPD was already insolvent when it made the $106,000 distribution to Erik Opsahl in 2018. Because all three Opsahls approved of that distribution, each Opsahl was jointly and severally liable to RPD for that amount.

The Opsahls argue that the trial court erred in garnishing that liability because it was owed to RPD, not to the LLC's creditors. Generally, ORS 63.235 does not independently provide an LLC's *creditors* with a cause of action against members; rather, the cause of action lies with the *LLC* against its members. *See Wakeman v. Paulson/Peake*, 264 Or 524, 529, 506 P2d 683 (1973) (so holding when interpreting the predecessor statute to ORS 63.235, *former* ORS 57.231 (1973)). In a garnishment proceeding, however, the plaintiffs "stand[] in the shoes of the judgment debtor." *FountainCourt Homeowners v. FountainCourt Develop.*, 264 Or App 468, 479, 334 P3d 973 (2014), *aff'd*, 360 Or 341, 380 P3d 916 (2016); *see also Weyerhaeuser Co. v. Lynch*, 268 Or 142, 146, 520 P2d 351 (1974) ("The law is well settled in Oregon that a garnishing creditor takes only such rights

or interest as his debtor had at the time the notice of garnishment was served."). Garnishment thus provides a mechanism for creditors to stand in the shoes of a debtor and pursue a debtor's claims against third parties—in this case, an LLC's claim against its members for unlawful distributions. The trial court did not err in concluding that a member's liability to a debtor LLC for unlawful distributions is garnishable.

The Opsahls further contend that the trial court erred in finding that they held garnishable property at the time of garnishment because there was no evidence that Erik Opsahl still possessed the distributed sum. That argument, however, misapprehends the nature of what was garnished in this case. The trial court did not garnish the distribution itself; it garnished the amount of the liability that was incurred as a result of the distribution. The trial court did not err in doing so because it properly found that all three Opsahls were personally liable to RPD for the unlawful distribution at the time of garnishment. Regardless of whether Erik had already spent the distribution, each Opsahl thus held a "monetary obligation[] owing to the debtor" at the time of garnishment, which is garnishable property as defined by ORS 18.615. The trial court did not err in garnishing the amount of liability owed to RPD by the Opsahls due to the unlawful distribution.

## B.   *Liability for Fraudulent Transfers*

The Twiggs cross-assign error to the trial court's determination that it could not garnish the allegedly fraudulent rent payments because the remedies under the UFTA, ORS 95.200 to 95.310, are limited in a garnishment proceeding. The UFTA defines a transfer as fraudulent as to present creditors if it was made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time." ORS 95.240(1). The Twiggs contend that RPD's lease of a building owned by the Opsahls was not for "reasonably equivalent value" because "rent" was paid with whatever money happened to be left after paying all other bills, and the Opsahls would never have evicted RPD if it failed to pay. The trial court did not reach the merits of whether the rent payments were

fraudulent because it construed the statute describing a creditor's remedies to preclude garnishment in this case.

ORS 95.260 describes a creditor's remedies in fraudulent transfer cases.[2] Subsection (1) provides creditors with a panoply of remedies against debtors and transferees in "action[s] for relief *** under" the UFTA, including avoidance, attachment, injunctive relief, appointment of a receiver, or "[a]ny other relief the circumstances may require." Subsection (2) "provides for an *in rem* judgment against the transferred asset or its proceeds," allowing creditors to claw back property that has subsequently been transferred again, even if the subsequent transferee took the property in good faith. *Cadle Co. II v. Schellman*, 126 Or App 372, 378, 868 P2d 773 (1994). In sum, ORS 95.260 provides creditors with two avenues for relief: They may obtain broad and flexible remedies against debtors and transferees in actions "under" the UFTA, and they may also proceed directly against the transferred asset itself.

The trial court determined that garnishment is not an action "under ORS 95.200 to 95.310," ORS 95.260(1), so it reasoned that the only available remedy was garnishment of the transferred asset itself under ORS 95.260(2), not garnishment of liability resulting from the transfers under

---

[2]    "(1) In any action for relief against a transfer or obligation under ORS 95.200 to 95.310, a creditor, subject to the limitations provided in ORS 95.270, may obtain:

"(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

"(b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Oregon Rules of Civil Procedure.

"(c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

"(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

"(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

"(C) Any other relief the circumstances may require.

"(2) If a creditor has obtained a judgment on a claim against the debtor and if the court so orders, the creditor may levy execution on the asset transferred or its proceeds."

ORS 95.260.

ORS 95.260(1). Because the Opsahls had subsequently spent the rent payments, the trial court concluded that the Twiggs failed to prove that the Opsahls still held the transferred asset so that it could be garnished under ORS 95.260(2). For the reasons that follow, we disagree with the trial court's interpretation of ORS 95.260(1).

The question is whether a UFTA action can proceed in garnishment. At first blush, garnishment does not appear to be an action for relief "under ORS 95.200 to 95.310" because it is described within ORS 18.600 to 18.850. However, the UFTA does not name any specific causes of action; rather, the statutes simply describe when a transfer is considered fraudulent and provide remedies for affected creditors. ORS 95.230 - 95.270. The UFTA was not intended to displace other legal remedies unless explicitly provided by its terms. *See* ORS 95.290 ("Unless displaced by the provisions of ORS 95.200 to 95.310, the principles of law and equity * * * supplement its provisions."); *see also Morris v. Nance*, 132 Or App 216, 220, 888 P2d 571 (1994), *rev den*, 321 Or 340 (1995) (recognizing that the UFTA "codifies principles recognized by the courts prior to its enactment"); Uniform Fraudulent Transfer Act (Refs & Annos) § 7 comment (1), (6) (1984) (noting that the remedies are "cumulative" and "not exclusive"). Indeed, the remedies specified in the statute include "[a]n attachment or other provisional remedy * * * in accordance with the procedure prescribed by any applicable provision of any other statute." ORS 95.260(1)(b). Rather than limit remedies to claims that are brought exclusively under the UFTA, the statute itself references remedies obtainable through other statutes. Thus, when an action for relief—such as garnishment—is based on and seeks a remedy authorized by the UFTA's provisions, it is an action for relief "under" the UFTA.

Case law from other UFTA jurisdictions is instructive. *See* ORS 95.300 (stating that the statutes "shall be applied and construed to effectuate [the UFTA's] general purpose to make uniform the law * * * among states enacting it"). It appears that the majority approach is to construe the remedies outlined in the UFTA to include garnishment. *See, e.g., Englert v. Englert*, 881 SW2d 517, 519 (Tex App 1994) ("The ability of a garnisher to attack transactions between

debtors and garnishees in a garnishment proceeding is also well established. We find no indication that the enactment of the Texas Uniform Fraudulent Transfer Act alters these basic principles." (Citations omitted.)); *Jensen v. Eames*, 30 Utah 2d 423, 428, 519 P2d 236, 239 (1974) ("A judgment creditor may litigate the question of a fraudulent conveyance in a garnishment proceeding, in a creditor's bill in equity, or in an execution proceeding[.]"); *Retzke v. Larson*, 166 Ariz 446, 448, 803 P2d 439, 441 (Ariz Ct App 1990) ("Legal action to prove a fraudulent conveyance need not be separate from the garnishment proceeding."). Indeed, some state legislatures in adopting the UFTA specifically identify garnishment as one of the remedies obtainable. *See, e.g.*, Ariz Rev Stat Ann § 44-1007(A)(1); Nev Rev Stat § 112.210(1)(b).

The functions of the UFTA and garnishment are easily integrated. "The purpose of the law of fraudulent conveyances is to enable creditors to reach property of the debtor which the debtor has concealed or endeavored to put out of reach of creditors by some type of transfer." Honor S. Heath, Charles A. Heckman, & Keara M. O'Dempsey, 1 *Business Torts* § 8.03 (2021). Garnishment enables a creditor to invoke the authority of a court "to acquire garnishable property of a debtor that is in the possession, control or custody of a person other than the debtor." ORS 18.602. Both garnishment and the UFTA are thus mechanisms for creditors to look to a third party for satisfaction. Together, they allow creditors to garnish assets that the debtor fraudulently transferred to a third party. Here, the creditors (the Twiggs) seek to garnish property belonging to the debtor (RPD), which was purportedly transferred fraudulently to the Opsahls.

Because the Twiggs' case for garnishment was based on allegations of fraudulent transfers, it was an "action for relief *** under" the UFTA. ORS 95.260(1). In order to prove their case, the Twiggs presented evidence and made arguments that the Opshals' rent payments violated the UFTA, *i.e.*, that the payments were not transferred for "reasonably equivalent value" at a time when RPD was insolvent. ORS 95.240. The trial court erred in declining to consider that evidence based on its conclusion that the Twiggs' garnishment

claim was not an "action for relief * * * under ORS 95.200 to 95.310." ORS 95.260(1). On remand, the trial court should determine whether the rent payments were fraudulent in order to determine whether they are garnishable.

Affirmed on appeal; reversed and remanded on cross-appeal.